## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

| | | |
|---|---|---|
| FARRAH M. FARR, PHILLIP BROWN, and KRISTOF & COMPANY, INC. | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) | CIVIL ACTION NO. |
| KOMMERINA DALING, JOHN O'SULLIVAN, SARAH WILSON-BRITT, in her individual and official capacity, MATT TATE, in his individual and official capacity, and THE CITY OF GAINESVILLE, GEORGIA, | ) ) ) ) ) ) ) ) | 2:22-cv-00133-SCJ |
| Defendants. | | |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT

## I.    INTRODUCTION

Dr. Phillip Brown and Farrah Farr simply wanted to rent out their home and occasionally use it for their own enjoyment. This matter began because a neighbor, Defendant John O'Sullivan, was caught peering into Ms. Farr's window while she was undressed. Because a voyeuristic trespasser was embarrassed he was caught, this situation turned into a campaign of harassment and intimidation from this neighbor and his wife with the help of their friend, who happened to be a high-

ranking official in the local government. In their Motion to Dismiss, the City of Gainesville, Sarah Wilson-Britt, and Matt Tate (collectively, "the City") attempt to downplay the severity of this situation. But it should be alarming to anyone how easily O'Sullivan was able to summon the government to help him and his wife destroy Ms. Farr's and Dr. Brown's Airbnb business, block the sale of their home, and utterly trample on their constitutional rights in the process. This is a classic example of either staggering ineptitude or pure authoritarian malice from the City, and either way proper claims have been alleged. The City cynically throws a confusing word blizzard at the Court to see what will stick, but the vast majority of their motion to dismiss has no merit.

O'Sullivan was monitoring Farr's Airbnb rental calendar and informed Tate that renters were arriving on a specific day in July 2020. Tate directed Wilson-Britt to drive through the driveway of 725 Mountain View every day from July 27-30, 2020 to harass and intimidate the renters.

Continuing their scheme, in October 2021, Sarah Wilson-Britt, at the direction of Matt Tate, sent a code enforcement letter falsely alleging that it was illegal to rent the property for periods of less than 15 days, and mandating that the property be removed from all rental websites (the "Code Enforcement Notice"). Rather than sending the Code Enforcement Notice contemporaneously with the July 2020

events, Tate and Wilson-Britt waited more than a full year and sent the letter only after Dr. Brown entered into a contract to sell the house to a buyer who also planned to rent it out. This extraordinary timing was not a coincidence.

The City's arguments regarding immunity of Wilson-Britt, Tate, and the City of Gainesville can be broken down into three categories: (1) The City argues that the state law claims[1] against Wilson-Britt and Tate are barred by official immunity; (2) Count VIII and Count IX claims against Wilson-Britt and Tate are barred by qualified immunity; and (3) The state law claims[2] against the City of Gainesville are barred by sovereign immunity. (There is no immunity defense for the City of Gainesville regarding Count VIII and Count IX.[3])

Official immunity is unavailable to a government official if their conduct involved (1) negligent performance of ministerial acts, which is any act that is simple and requires the execution of a specific task without any discretion; or (2) an act that

---

[1] These state law claims are: Count III – Tortious Interference with Business Relations; Count IV – Tortious Interference with Contractual Relations – Purchase Agreement; Count V – Tortious Interference with Contractual Relations - Rental Agreements; Count X – Civil Conspiracy; Count XI – Negligence; Count XII – Intentional Misrepresentation; and Count XIII – Negligent Misrepresentation.

[2] The same state law claims listed in Footnote 1 above.

[3] The City of Gainesville can be sued directly under § 1983 for monetary, declaratory, or injunctive relief. Therefore sovereign immunity also does not bar Count XIV for Declaratory Judgment or Count XV for Permanent injunctive Relief. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).

does involve exercising discretion that is done with actual malice. Tate and Wilson-Britt both (1) negligently performed ministerial tasks; and (2) performed discretionary tasks with actual malice. Under either analysis, the state law claims against Wilson-Britt and Tate must survive a motion to dismiss.[4] The City also makes a perfunctory attempt to attack the substance of the tortious interference claims in Counts III-V, but this attempt is unavailing. The City does not substantively challenge the remaining state law claims listed in Footnote 1. Further, qualified immunity does not protect Wilson-Britt and Tate from Count XIII for violation of rights under § 1983. Qualified immunity does not protect the "plainly incompetent or one who is knowingly violating the federal law." *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003).

Following the immunity arguments, the City also makes two unsuccessful substantive arguments regarding the § 1983 claim. First, the City erroneously argues that Count XIII pursuant to § 1983, should be dismissed as to the City of Gainesville for failing to plead that Tate and Wilson-Britt's actions were pursuant to a policy of the city. This argument fails because the City ignored binding Supreme Court

---

[4] The City of Gainesville's sovereign immunity as to the state law claims turned on whether it had an insurance policy that covered the claims alleged. Kristof & Co., Farr and Brown do not oppose the City of Gainesville's argument that sovereign immunity bars the state law claims listed in Footnote 1 above against the City of Gainesville, Georgia now that it has produced the insurance policy.

precedent that a single act by a policy maker is sufficient to state a § 1983 claim against a city. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986).

Second, under Count VIII, Farr, Brown, and Kristoff & Co. (collectively, the "Owners") pled three separate violations under Section 1983. They allege that the City of Gainesville, Wilson-Britt, and Tate (1) deprived Plaintiffs of property without due process of law under the 14th Amendment; (2) deprived Plaintiffs of rights of equal protection under the 14th Amendment; and (3) deprived Plaintiff of their constitutional rights to freedom of speech under the First Amendment. [Doc. 21 ¶ 125]. These are three separate and independent claims under §1983. Therefore, these claims do not rise or fall as a unit and require separate analysis and separate rulings. The City, Wilson-Britt, and Tate do not challenge the substance of the freedom of speech claims or the equal protection claims. Therefore, these counts automatically survive the motion to dismiss as to these constitutional violations. Finally, the City's argument regarding property rights also fails as a matter of law. In conclusion, (1) all of the counts in the Amended Complaint against Wilson-Britt and Tate survive the motion to dismiss; and (2) all of the counts (except for the state law claims listed in Footnote 1) against the City of Gainesville survive the motion to dismiss.

## II.     FACTUAL BACKGROUND

A.   Tate informed Farr in 2019 that there were no restrictions on the length
of time she could rent 725 Mountain View

Since 2012, Dr. Brown has owned a house on Lake Lanier in the Gainesville

city limits, located at 725 Mountain View Circle, Gainesville, GA 30501 ("725

Mountain View").[5] [Doc. 21 ¶¶ 12-13]. He originally owned the property in equal

share with his now ex-wife but bought out her share in 2019. Prior to buying out the

ex-wife's share, Ms. Farr called the City of Gainesville to ask if it was legal to rent

725 Mountain View on rental websites to determine if the property could generate

income. Matt Tate returned Ms. Farr's phone call in May 2019 and answered her

question in the affirmative. [*Id.* ¶¶ 16-17].  According to Tate, he even looked up the

address and confirmed there were no issues with listing 725 Mountain View on

rental websites for any length of time. [*Id.*].

B.   O'Sullivan invades Ms. Farr's privacy by peering into her window

John O'Sullivan ("O'Sullivan") and Kommerina Daling ("Daling") own the

property next door to 725 Mountain View at 715 Mountain View Circle, Gainesville,

GA 30501 ("715 Mountain View") and rent this property to third parties. [Doc. 21 ¶

19].  On July 11, 2020, Ms. Farr was staying at 725 Mountain View, relaxing by the

---

[5] Dr. Brown and Ms. Farr are engaged and have a business arrangement in which
Ms. Farr rents 725 Mountain View through Kristof & Co. to third parties on rental
sites such as Airbnb and Vrbo. [Doc. 21 ¶¶ 14-15].

pool, swimming, and doing yoga. [*Id*. ¶ 20]. Unbeknownst to Ms. Farr, O'Sullivan was watching her. [*Id*.]. Ms. Farr went inside to take a shower and very shortly thereafter, saw Mr. O'Sullivan with his face pressed against the window staring at her while she was completely undressed. [*Id*. ¶ 20]. On July 16, 2020, Dr. Brown encountered O'Sullivan outside and told O'Sullivan to never enter his property ever again. [*Id*. ¶ 27]. This request to refrain from violating Ms. Farr's privacy began a campaign of harassment from Daling and O'Sullivan as well as the City of Gainesville, Tate, and Britt-Wilson. [*Id*. ¶ 28].

C.   O'Sullivan contacts his friend Matt Tate to enlist his help with a campaign of harassment against Farr and Brown

On July 17, 2020, the day after Dr. Brown requested that O'Sullivan refrain from trespassing and invading Ms. Farr's privacy, O'Sullivan emailed Tate, the Community and Economic Development Deputy Director of Gainesville. [Doc. 21 ¶ 29]. Tate and O'Sullivan have a relationship dating back to at least 2011 when both were involved in the Gainesville 2030 Comprehensive Plan Community Assessment. [*Id*. Fn. 1]. In fact, Tate, O'Sullivan, and Daling are close enough that they had dinner together on February 8, 2022 following a city Planning and Appeals Board meeting. [*Id*. ¶ 79].

The City of Gainesville website states that reports of code violations "may be made by telephone or in person to any member of the Code Enforcement Division

or the Gainesville Police Department."[6] The website lists the Code Enforcement Manager as Jeff Bull and provides his contact information.[7] Rather than follow the instructions from the City of Gainesville website, O'Sullivan reached out directly to Tate, someone with whom he had a pre-existing relationship to falsely allege that the Owners were using their property for weddings, music venues, parties, loud music, and mid-day fireworks. [*Id.* ¶¶ 29-30]. Tate and Wilson-Britt failed to do any investigation into these false claims in violation of Gainesville's Unified Land Development Code. [*Id.* ¶¶ 58, 66-67].

D.     Code Enforcement intimidates renters at O'Sullivan's request

In July, 2020, a family rented 725 Mountain View on Airbnb. O'Sullivan was monitoring the Airbnb rental calendar and informed Tate that "[a]ccording to the Airbnb calendar, the next set of renters will arrive tomorrow, 7/24/20." [Doc. 21 ¶ 33]. Tate directed Wilson-Britt or another employee from Gainesville Code Enforcement to drive through Farr and Brown's driveway every day from July 27-30, 2020 (and on July 29 more than once during the day) to harass and intimidate

---

[6] *See* Code Enforcement, City of Gainesville, https://www.gainesville.org/173/Code-Enforcement and screenshot of website attached hereto as **Exhibit A**. Court's may take judicial notice of government websites. *Lamonte v. City of Hampton, Georgia*, 576 F. Supp. 3d 1314, 1327 (N.D. Ga. 2021).
[7] *Id.*

the Owners' renters. [*Id.* ¶¶ 36-37]. The renters no longer felt safe staying there and left early, costing the Owners a significant amount of money. [*Id.* ¶ 38].

      E.    <u>Attempted Sale of 725 Mountain View</u>

On July 23, 2021, Dr. Brown listed 725 Mountain View for sale. [Doc. 21 ¶ 46]. On September 23, 2021, Dr. Brown and the Buyer entered into a contract for the sale of 725 Mountain View for $2,700,000.00 cash offer, with no contingencies and with a closing 45 days later. [*Id.* ¶ 49]. Farr and Brown were made aware that the City knew Dr. Brown listed 725 Mountain View for sale and knew the property was under contract and to whom it was under contract. [*Id.* ¶ 50].

      F.    <u>Code Enforcement Notice from Wilson-Britt misusing city ordinances</u>

On October 15, 2021, at the direction of Tate, Wilson-Britt, the City of Gainesville Code Enforcement Manager, sent a notice to Dr. Brown erroneously alleging that 725 Mountain View was being used for "lodging services" and threatening to issue a citation if the property was not removed from all rental websites such as Vrbo and Airbnb. ("Code Enforcement Notice"). [Doc. 21 ¶¶ 51-52]. The Code Enforcement Notice alleged that "'Lodging Services' is defined in Table 9-6-1 of the City's Unified Land Development Code as a facility that offers shelter accommodations to the public for 15 days or less for a fee. The Property is zoned as R-1, and services is not allowed in an R-1 zoning district." [*Id.* ¶ 53].

1. <u>Three egregious errors in the Code Enforcement Letter</u>

First, 725 Mountain View is zoned as R-1 residential district as defined in the City of Gainesville Unified Land Development Code ("ULDC") 9-5-2. Tate and Wilson-Britt knew or should have known that Table 9-6-1 only applied to "Nonresidential Zoning Districts" and was not applicable to residential zoning districts such as R-1 zoning districts. *See* Article 9-6 of the ULDC. [Doc. 21 ¶ 55].

Second, Wilson-Britt, negligently or intentionally, left out a key part of the definition of lodging services in Table 9-6-1 that shows it does not apply to renting out an entire home, as opposed to renting one room. The full definition of lodging services states "A facility that offers temporary (fifteen (15) days or less *in one room*) shelter accommodations or place for such shelter, open to the public for a fee. Includes hotels and motels." Article 9-6, Table 9-6-1 of the ULDC. [*Id.* ¶ 54].

Third, "lodging services" in Table 9-6-1 is the definition for "lodging services, extended stay." This is "[a[ facility that offers shelter accommodations, or place for such shelter, open to the public for a fee for more than fifteen (15) days but not to exceed one month in one room." The City has already admitted that it is not a violation to rent out homes for more than 15 days. [Doc. 26-1, p. 4]. Wilson-Britt and Tate knew or should have known that if "Lodging services, extended stay" in Table 9-6-1 did not apply to R-1 districts, neither did "lodging services."

G.    The Code Enforcement Letter derails the sale of 725 Mountain View

The Owners had no choice but to report this letter to the buyer under contract for the property at 725 Mountain View. [Doc. 21 ¶ 62]. Because the buyer intended to purchase 725 Mountain View and rent it out, including renting it on such rental websites as Vrbo and Airbnb, the buyer decided not to close the sale as a direct result of the Code Enforcement Notice. [*Id.* ¶ 64].

H.    The City's unequal treatment of the Owners

Before sending the October 15 Correspondence to Dr. Brown, City of Gainesville and Code Enforcement had never threatened any other homeowners with a citation for renting properties on rental websites such as Vrbo and Airbnb, despite the fact that there were and are various properties in Gainesville listed for rent on such rental websites for periods of less than 15 days as well as periods of more than 15 days. [Doc. 21 ¶ 68]. Moreover, the City did not send correspondence to any other homeowners demanding removal of their property from rental websites until November 22, 2021, at which time they sent out one letter to a third-party homeowner to cover their unequal treatment of the Owners. [*Id.*].

I.    The City intentionally delayed responding until after the closing date

Even after the closing date, the Buyer expressed interest in purchasing 725 Mountain View if a timely resolution to the dispute with the City occurred. [Doc. 21

11

¶ 69]. Farr and Brown continued to act diligently through counsel who contacted the City numerous times to appeal the unlawful directives. [*Id.* ¶ 70]. The City systematically delayed any resolution until February 4, 2022 when the Director of Community and Economic Development admitted the City does not prohibit listing property on rental websites. [*Id.* ¶¶ 71-72]. By this time, the Buyer had invested his money elsewhere and was no longer interested in 725 Mountain View. [*Id.* ¶ 73].

## III.   ARGUMENT AND CITATION OF AUTHORITY

### A.   Standard of Review

Rule 8 of the Federal Rules of Civil Procedure requires that a federal civil complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pr. 8(a)(2). Under Rule 12(b)(6), the test of whether a claim should be dismissed is whether the allegations "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must "accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor." *Bailey v. Wheeler*, 843 F.3d 473, 478 n.3 (11th Cir. 2016).

### B.   State law claims against Wilson-Britt and Tate are not barred by official immunity[8]

---

[8] The official immunity argument solely applies to the state law claims listed in Footnote 1 against Wilson-Britt and Tate.

Under Georgia law, a public employee may be personally liable for (1) ministerial acts negligently performed; and (2) discretionary acts performed with malice or an intent to injure. *McDowell v. Smith*, 285 Ga. 592, 593 (2009). Whether the acts of a public official are ministerial or discretionary is determined by the facts of each individual case. *Grammens v. Dollar*, 287 Ga. 618, 620 (2010). In the instant case, Tate and Wilson-Britt both (1) negligently performed ministerial tasks; and (2) performed discretionary tasks with malice. For either of these separate and independent reasons, the City's Motion to Dismiss the state law claims against Wilson-Britt and Tate must be denied.

      1.   <u>Tate and Wilson-Britt negligently performed ministerial tasks</u>

As the City correctly noted, a public employee may be personally liable for ministerial acts that were negligently performed. [Doc. 26-1 at 10-11]. A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. *Grammens*, 287 Ga. at 619. However, the City fails to acknowledge or even reference the factual allegations showing that Tate and Wilson-Britt negligently performed ministerial acts. The Amended Complaint alleges that (1) Tate and Wilson-Britt failed to investigate Daling and O'Sullivan's claims regarding violations of city ordinances at 725 Mountain View [Doc. 21 ¶ 66]; and (2) Tate and

Wilson-Britt erroneously applied non-residential zoning district ordinances to a residential zoning district. [*Id*. ¶ 55]. Both of these acts were ministerial duties that Tate and Wilson-Britt negligently performed.[9]

       i.      <u>Wilson-Britt and Tate failed to investigate O'Sullivan's false claims</u>

Tate and Wilson-Britt failed to investigate O'Sullivan's claims that the Owners were violating the City of Gainesville ordinances. [Doc. 21 ¶¶ 59, 62]. Georgia courts have routinely held that a policy that directs a public official to perform an investigation or inspection created a ministerial duty on the part of the public official to perform this task. *See Happoldt v. Kutscher,* 256 Ga.App. 96, 98, 567 S.E.2d 380 (2002) (county ordinance requires officer to perform ministerial duty of inspecting construction sites to ensure compliance with requirements); *Wanless v. Tatum*, 244 Ga.App. 882, 884, 536 S.E.2d 308 (2000) (county engineer had ministerial duty to obey policy requiring the investigation of complaints regarding roads); *Phillips v. Walls*, 242 Ga. App. 309, 311 (2000) (actions of crews in carrying out directions regarding inspection and maintenance are ministerial). In *Wanless*, the Court of Appeals reversed the granting of summary judgment based on official

---

[9] However, if Wilson-Britt and Tate intentionally lied about these code provisions, then they were more than negligent, they were malicious. Either way, official immunity does not protect them.

immunity holding that a jury must decide whether the official negligently breached his ministerial duty to investigate. *Id*.

The above cases are controlling. Here, the ULCD mandated that following receipt of a complaint alleging a violation of the Code "[t]he designated code officer *shall* record properly such complaint, investigate, and take action thereon as may be appropriate to enforce this Code." ULDC Sec. 9-24-2-1. [Doc. 21 ¶ 58]. This ordinance created a ministerial duty for Tate and Wilson-Britt to conduct an investigation. However, they failed to do so.[10] [Doc. 21 ¶ 66]. Even though the Amended Complaint alleges the exact opposite, the City alleges in its Motion to Dismiss that it investigated Daling and O'Sullivan's claims. [Doc. 26-1 p. 4]. This question of fact alone shows that the Motion to Dismiss should be denied as to official immunity. Wilson-Britt and Tate's failure to investigate constitutes negligent performance of their ministerial duties.[11]

    ii.    <u>Wilson-Britt and Tate negligently applied the wrong Code section</u>

---

[10]Ironically, considering this matter involves misapplication ordinances, the City alleged in its initial motion to dismiss that it did not have a duty to investigate and cited to the incorrect code section to support this erroneous assertion. [Doc. 17-1, p. 10-11]. In its current Motion to Dismiss, the City dropped this argument.

[11] Prior to listing 725 Mountain View on any rental websites, Ms. Farr called Gainesville to ask if it was legal to rent 725 Mountain View on rental websites. [Doc. 21 ¶ 16]. Tate said yes. [Doc. 21 ¶ 16]. It is hard to imagine a more ministerial task than answering a yes or no question.

Wilson-Britt and Tate are also not entitled to official immunity as to the state law claims because their conduct in misapplying Table 9-6-1 of the ULCD to an R-1 zoning district was negligently performing a ministerial task. It does not involve any level of discretion to determine that this table applies to "Nonresidential Zoning Districts" and does not apply to residential zoning districts. Therefore, the misapplication of this code section that lead to Wilson-Britt sending the Code Enforcement Notice erroneously alleging that 725 Mountain View was being used for lodging services and threatening a citation if it was not removed from all rental websites, constitutes negligently performing a ministerial duty. Therefore, Wilson-Britt and Tate are not entitled to official immunity and their motion to dismiss the state law claims against them on the basis of official immunity should be denied.

2.  <u>The Owners adequately plead malice and The City's impermissible attempt to impose a higher pleading standard is unavailing</u>

In erroneously stating that the Owners did not allege any malicious acts of Wilson-Britt and Tate, the City first invents a higher pleading standard than is required by Federal Rules and the case law of this Court and then alleges the Amended Complaint failed to meet the made-up standard. The City's allegation that the Owners did not allege any malicious acts by Tate and Wilson-Britt is simply untrue. More importantly, the City erroneously states that a failure to allege malicious acts in a complaint warrants dismissal based on official immunity. This

position is directly contrary to the Federal Rules. FRCP 9(b) does not require pleading malicious acts with specificity. FRCP 9(b) states "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). *See also Brown v. Fluellen*, 564 F. Supp. 3d 1308, 1316 (N.D. Ga. 2021)("Rule 9(b) permits a plaintiff to generally allege malice and intent…").

The Owners alleged that Wilson-Britt and Tate (1) "acted purposely and with malice to interfere with Plaintiffs' ability to rent 725 Mountain View to cause injury to Plaintiffs"; (2) "acted purposely and with malice to interfere with the Purchase Agreement" for the property; "acted purposely and with malice to interfere with contractual relationships" and (3) made intentional misrepresentations causing damage to the Owners. [Doc. 21 ¶¶ 93, 102, 111, 150]. These allegations alone are sufficient to survive a motion to dismiss.

However, as the Court in *Brown* noted, "while Rule 9(b) permits a plaintiff to generally allege malice and intent, the Complaint does more." *Brown*, 564 F. Supp. 3d at 1316. Here, the Amended Complaint also does more even though general allegations are sufficient. The Amended Complaint alleges: (1) Tate directed Wilson-Britt to drive through the Owners driveway every day from July 27-30, 2020 to harass and intimidate the Owners' renters as a result of the prompting of O'Sullivan. [Doc. 21 ¶¶ 36-37]; (2) The City was aware that Dr. Brown listed 725

17

Mountain View for sale and knew the property was under contract and knew to whom it was under contract. [*Id.* ¶ 50]; (3) On October 15, 2021, Wilson-Britt sent a notice to Dr. Brown falsely alleging that 725 Mountain View was being used for lodging services and threatening a citation if the property was not removed from all rental websites. [*Id.* ¶¶ 51-52]; (4) In the Code Enforcement Notice, Wilson-Britt intentionally left out a key part of the definition of lodging services in Table 9-6-1, which would have shown it did not apply to renting out entire homes. [*Id.* ¶ 54].

Actual malice is the "deliberate intention to do wrong" or the "actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury." *Gates v. Khokhar*, 884 F.3d 1290, 1304 (11th Cir. 2018). The Owners have alleged several facts to show actual malice. But even general allegations of malice are sufficient. Therefore, Wilson-Britt and Tate's motion to dismiss on the grounds of official immunity must be denied.

C.    **Tate and Wilson-Britt are not protected by qualified immunity as to the Section 1983 claims[12]**

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights

---

[12] The qualified immunity argument solely applies to the § 1983 claims against Wilson-Britt and Tate.

of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Carr v. Tatangelo*, 338 F.3d 1259, 1266 (11th Cir. 2003). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003).

The facts of the case at bar are the exact situation in which qualified immunity does not protect Wilson-Britt and Tate. Either Wilson-Britt and Tate were severely incompetent or they acted with intentional malice. There is no in between. The idea that an irrational neighbor with an axe to grind can that easily summon government officials to aid in there vendetta is an anathema to the way our law works.

1. Wilson-Britt and Tate are not protected by qualified immunity from discretionary conduct that violated clearly established rights

A plaintiff shows that qualified immunity is not appropriate by satisfying a two-part inquiry. *Mercado v. City of Orlando*, 407 F.3d 1152, 1156 (11th Cir. 2005). A plaintiff must show that the public officials violated a constitutional right. *Id*. Then, a court must determine if that right was clearly established. *Id*. It should be clear to any official that a total ban on commercial speech is a violation of

constitutional rights. Similarly, it should be abundantly obvious that arbitrarily banning only a single homeowner from renting their property for periods of less than 15 days is a violation of equal protection rights.

The City's Motion to Dismiss directly misstates the rule in the Eleventh Circuit case law that is the lynchpin of its qualified immunity argument. Therefore, the City's motion to dismiss on the basis of qualified immunity should be denied. The City cites *Mercado* for the proposition that "general principles of law are not specific enough to provide fair warning to a government defendant that his conduct was unlawful." [Doc. 26-1 p. 15]. This is the opposite of what *Mercado* states. The Court in *Mercado* actually states "[i]f there is no case law directly on point, general statements of the law contained within the Constitution, statute, or caselaw *may sometimes provide fair warning of unlawful conduct*…[t]he general principle of law must be specific enough to give the officers notice of the clearly established right*.*" *Mercado* 407 F.3d at 1159 (emphasis added).

The Eleventh Circuit also held that a broad principle in case law is sufficient to establish the law applicable to a specific set of facts, when it does so "with obvious clarity." *Williams v. Consol. City of Jacksonville*, 341 F.3d 1261, 1270 (11th Cir. 2003). Here, it was obvious to Tate and Wilson-Britt that they were violating The Owners' equal protection rights and freedom of speech rights.

i.   <u>Wilson-Britt and Tate violated The Owners' freedom of speech rights</u>

It is beyond dispute that Wilson-Britt and Tate's unlawful order to remove 725 Mountain View from all rental websites constituted a total ban on the Owners' freedom of speech in violation of their First Amendment rights. Therefore, the first prong of the inquiry is satisfied. *In Keating v. City of Miami*, the Eleventh Circuit found that qualified immunity did not protect officers from violating protesters' First Amendment rights because broad principles of law clearly established the right to peacefully protest and the officers completely eviscerated that right. 598 F.3d 753, 766 (11th Cir. 2010). Any fair reading of *Keating* is fatal to the City's qualified immunity argument. *Keating* establishes beyond doubt that a total ban on speech is the type of broad principle that is sufficient to clearly establish the law applicable to specific facts facing a government official.

In *Keating*, the officers argued that they were entitled to qualified immunity with respect to First Amendment violations because it was not clearly established that it is unconstitutional "for a supervisory officer to give an order to other officers to use less-than-lethal weapons to disperse a crowd at a large public demonstration..." *Id.* at 766. The Court rejected this argument even though its research located no cases that illustrate a factually identical violation of the First Amendment. *Id*. Instead, the Court stated that "prior cases clearly establishing the

constitutional violation…need not be materially similar to present circumstances so long as the right is sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id*. (internal citations omitted). The qualified immunity analysis does not require "a prior case wherein the very action in question has previously been held unlawful." *Id*. (internal citations omitted).

The Court noted that any lingering question about whether police officers could completely prohibit individuals or groups from assembling, speaking, and distributing literature, was put to rest in 1983 when the Court decreed that "there is no doubt that as a general matter peaceful picketing and leafletting are expressive activities involving speech protected by the First Amendment." *Id*. at 766-77. The Court ultimately held that "the constitutional violation was clearly established because a broader principle, that peaceful demonstrators have a First Amendment right to engage in expressive activities, should control the novel facts in this situation." *Id*. at 767.

*Keating* is controlling to the case at bar. Just as the officers' conduct in *Keating* completely silenced the protests, Tate and Wilson-Britt's unlawful directive to remove all advertisements of 725 Mountain View from rental websites was a **complete ban** on the Owners' freedom of speech. The Supreme Court has held that commercial speech is protected and that a total ban on promotional advertising

violates the First Amendment. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 571 (1980). Just as the Supreme Court left "no lingering doubt" that preventing protesters from peacefully picketing was a violation of their freedom of speech, so too have they left no lingering doubt that a total ban on commercial speech violates the First Amendment.

        ii.    <u>Wilson-Britt and Tate violated The Owners' Equal Protection Rights</u>

Tate and Wilson-Britt were obviously aware that their conduct violated the Owners' equal protection rights. Here, the Owners allege that Wilson-Britt and Tate intentionally and arbitrarily applied the non-residential zoning ordinances to 725 Mountain View even though these ordinances do not apply to the R-1 zoning district where it is located. The Supreme Court has recognized successful equal protection claims on multiple occasions, where "the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." <u>Vill. of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000). In *Olech*, the plaintiff alleged that the village demanded a 33-foot easement to connect her property to the water supply but the village only required a 15-foot easement from other similarly situated property owners. *Id*. The *Olech* case is just like the instant case.

Here, Tate and Wilson-Britt engaged in the very same conduct -- intentionally and arbitrarily treating the Owners' differently from similarly situated homeowners with no rational basis. Tate initially informed Farr that there were no restrictions on renting her property for any length of time or listing it on rental websites. Therefore, the allegations show conclusively that Tate was aware he was violating the Owners' constitutional rights to equal protection when he directed Wilson-Britt to send the letter alleging that the non-residential zoning ordinances applied to 725 Mountain View. Moreover, the City did not send correspondence to any other homeowners demanding that they remove their property from rental websites until November 22, 2021, at which time they sent out one single letter to a third-party homeowner in an effort to cover their unequal treatment of the Owners. [Doc. 21 ¶ 68].

      iii.   <u>The Eleventh Circuit has also held that intentional misconduct is enough to bar defendants from qualified immunity protection</u>

While the above is more than enough to deny The City's motion on qualified immunity grounds, Wilson-Britt and Tate are also not entitled to qualified immunity for intentional misconduct. The Eleventh Circuit has found that intentional misconduct was sufficient to prevent qualified immunity. *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004) *abrogated in part on other grounds* by *Nieves v. Bartlett*, 139 S. Ct. 1715 (2019); *see also Rogers v. City of Coll. Park*, Georgia, No. 1:16-CV-01556, 2019 WL 4168797, at *8 (N.D. Ga. Sept. 3, 2019).

24

"The principles behind qualified immunity would be rendered meaningless if such immunity could be invoked to shelter [government officials] who, because of their own interests, allegedly flout the law, [and] abuse their authority…" *Kingsland*, 383 F.3d at 1234. The Owners have clearly alleged that Tate and Wilson-Britt intentionally flouted the law and abused their authority. Here, Tate, a government official, specifically informed taxpayers that they were allowed to rent their home for any length of time. Then, following a call from a disgruntled neighbor who happened to be his friend, Tate directed Wilson-Britt to threaten Farr and Brown with a citation for doing exactly what he represented was legal *and* mandated a complete ban on their freedom of speech. Such conduct does not get any more egregious. This is essentially the code enforcement equivalent of a false arrest and the very idea that a government official could claim qualified immunity for intentional wrongdoing shocks the conscience.

**D.**   **The Owners have adequately pled a *Monell* claim against the City of Gainesville, therefore Count VIII under § 1983 should not be dismissed as to the City of Gainesville**

In *Monell v. New York City Dept. of Soc. Servs*, the Supreme Court held that when execution of a government's policy or custom by those whose acts may be fairly said to represent official policy, then the government entity is liable under §

1983. 436 U.S. 658, 695 (1978). However, the Court noted that it was not addressing the "full contours of municipal liability" under § 1983 with this holding. *Id*.

The City's assertion that the Owners were required to allege prior instances when the City misapplied Table 9-6-1 to assert a § 1983 claim ignores binding Supreme Court precedent. The Supreme Court's decision in *Pembaur* interpreting the contours of *Monell* held that "it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 470 (1986).

In its Motion to Dismiss, the City disregards the allegation that Tate and/or Wilson-Britt possess final policy-making authority regarding code enforcement in the City of Gainesville, Georgia. [Doc. 21 ¶ 133]. The City's entire argument in this section of its Motion to Dismiss is predicated on the erroneous assumption that a single decision is not sufficient to state a claim against a city under *Monell*. The City's disregard for clear Supreme Court precedent is fatal to its argument.

Section 9-24-1-3 of the ULDC states that "the director of planning and development or designee shall have all the necessary powers explicitly provided or reasonably implied in connection with the administration of this Code." Rusty Ligon is the Community and Economic Development Director and Matt Tate is the Community and Economic Development Deputy Director. Matt Tate, as designee,

26

is the final policy-making authority pursuant to the ULDC and a single act by a final policy maker is sufficient to state a *Monell* claim against a city. *Pembaur*, 475 U.S. at 470. Therefore, the City's motion to dismiss Count VIII against the City of Gainesville should be denied.

**E.**   **The Owners clearly alleged a violation of their freedom of speech rights; equal protection rights; and property rights under Section 1983**

Under Count VIII of the Amended Complaint, the Owners pled three separate violations under Section 1983. The Owners allege that the City "(1) deprived Plaintiffs of their 14th Amendment Constitutional rights and constitutes deprivation of property without due process of law;" "(2) deprived Plaintiffs of their 14th Amendment rights of equal protection under the law;" and "(3) deprived Plaintiff of their First Amendment constitutional rights to freedom of speech." [Doc. 21 ¶ 125]. These are three separate and independent claims in Count VIII under Section 1983. Therefore, these claims do not rise or fall as a unit and require separate analysis and separate rulings on a motion to dismiss.

To add some clarity to the City's Motion to Dismiss, Section F regarding substantive due process and Section G regarding procedural due process of the City's Motion to Dismiss pertain to Count VIII of the Amended Complaint. Section F of the Motion to Dismiss is irrelevant to the Owners' 1983 claims. The entirety of Section F is devoted to arguing that there are no substantive due process protections

for state-created property rights. However, the Owners' only due process claim regarding property rights is a procedural due process violation (which will be described in more detail below), not a substantive due process claim. There is no mention of the First Amendment at all and there is no discussion of the equal protection claim under the Fourteenth Amendment. Section F solely argues that there are no substantive due process property rights. Because the Owners are not alleging substantive due process rights for state-created property rights, that section of the City's Motion to Dismiss can be disregarded.

1.    The City failed to challenge the Owner's First Amendment Claim under 1983 in its Motion to Dismiss

The City did not challenge the violation of the First Amendment freedom of speech claim under Section 1983. Therefore, because qualified immunity does not bar the federal claims against Tate and Wilson-Britt and the Owners adequately pled a *Monell* claim against the City, Count VIII automatically survives the motion to dismiss as to Count VIII for deprivation of the Owners' First Amendment constitutional rights of freedom of speech.[13] It is also beyond dispute that

---

[13] Because the City did not raise any issue with this claim, they have waived this argument and cannot raise it in a reply brief. *See  Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005)("Arguments raised for the first time in a reply brief are not properly before a reviewing court."); *U.S. v. Dicter*, 198 F.3d 1284, 1289 (11th Cir.1999) (issue raised for first time in reply brief waived); *Davis v.*

commercial speech is protected by the First Amendment and a total ban on speech is a constitutional violation. *See Cent. Hudson Ga & Elec. Corps.*, 447 U.S. at 571; *see also Tisdale v. Gravitt*, 51 F. Supp. 3d 1378, 1387–89 (N.D. Ga. 2014)(denying summary judgment because a reasonable jury could find that a total ban on filming City Council meetings is a violation of the plaintiff's First Amendment rights).

### 2.   The City failed to challenge the Owner's Equal Protection claim

The City also did not challenge the violation of Fourteenth Amendment equal protection claim under Section 1983. The City's analysis in Section F is solely limited to whether or not the Owners' identified a federally protected property right. However, this is irrelevant to an equal protection claim under the Fourteenth Amendment. "The identification of a property interest is *not* a required element of an equal protection claim." *Fulton Cnty. v. Legacy Inv. Grp., LLC*, 296 Ga. App. 822, 825 (2009)(emphasis in original).

Even if the City had properly challenged the equal protection claim, the motion to dismiss must be denied on those grounds because the Owners' adequately alleged an equal protection claim. As discussed above, a successful equal protection claim can be predicated on a "class of one" theory where the plaintiff alleges that he

---

*GGNSC Admin. Servs. LLC*, 290 F. Supp. 3d 1332, 1337 (M.D. Ga. 2017)("a reply brief is not the appropriate time to present new arguments.").

has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *See Olech*, 528 U.S. at 564. Despite many homeowners in Gainesville listing properties on rental websites for periods of less than 15 days, the City of Gainesville and Code Enforcement did not issue notices to any other homeowners until after the October 15, 2021 Code Enforcement Notice. [Doc. 21 ¶ 68].

3.  The City failed to provide adequate procedural due process when depriving the Owners' of their property rights

According to the Eleventh Circuit, "a § 1983 claim alleging the denial of procedural due process requires proof of three elements: (1) a deprivation of constitutionally-protected property interest; (2) state action; and (3) constitutionally-inadequate process." *Cook v. Randolph County, Ga.*, 573 F.3d 1143, 1148-49 (11th Cir. 2009). The second element is not in dispute. The Owners' have two separate bases showing they adequately pled the deprivation of a property interest. (1) the Owners had the right to use their property for any lawful purpose; and (2) the Owners had the right to rent their property for any length of time based on explicit mutual understandings with the City. Based on either of these grounds, the Owners' adequately alleged a protected property interest.

i.  The Owners have a property interest in using 725 Mountain View for any lawful purpose

The Owners' had a protected property interest in using their property for any lawful purpose (including renting it to third parties) and the City's directives in the Code Enforcement Notice infringed on these rights. The owner of property has the "right to use his property for any lawful purpose, and any claim that there are restrictions and limitations in the use of such property must be clearly and indubitably established." *Wiggins v. Young*, 206 Ga. 440 (1950).

    ii.    <ins>The Owners have a mutual understanding with the City that they could rent 725 Mountain View for any length of time</ins>

The City correctly notes in its Motion to Dismiss that a protected property right exists when the plaintiff has a legitimate claim of entitlement based on a "mutually explicit understanding." *See* [Doc. 26-1 p. 21]; *see also Barnes v. Zaccari*, 669 F.3d 1295, 1303 (11th Cir. 2012). The Supreme Court has made it clear that 'property' interests subject to procedural due process protection are not limited by a few rigid, technical forms. Rather, 'property' denotes a broad range of interests that are secured by "existing rules or understandings." *Perry v. Sindermann*, 408 U.S. 593, 601 (1972). A person's interest is a 'property' interest for due process purposes if there are mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing. *Id*.

In *Perry*, the plaintiff alleged the existence of rules and understandings promulgated by state officials that may justify his legitimate claim of entitlement to

continued employment. *Id*. The Supreme Court stated that the plaintiff's allegations of the existence of these unwritten rules and understandings can support the existence of a legitimate claim of entitlement to a property interest. *Id*. Here, there is an even stronger case to deny the City's Motion to Dismiss. In May 2019, Matt Tate explicitly informed Ms. Farr that it was legal to rent 725 Mountain View for any length of time. [Doc. 21 ¶ ¶ 16-17]. Tate even looked up the address and confirmed there were no restrictions on renting 725 Mountain View. [*Id*.]. Mutual understandings do not get more explicit than the facts of this case.

  iii. <u>The Owners have alleged constitutionally-inadequate process</u>

  For more than a century the central meaning of procedural due process has been clear: "Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified." *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972). It is equally fundamental that the right to notice and an opportunity to be heard "must be granted at a meaningful time and in a meaningful manner." *Id*. The Supreme Court also insists that opportunity for the hearing must be provided before the deprivation takes effect. *Id*. at 82. The City's argument that there is an adequate state remedy misses the mark. The City did not provide pre-deprivation notice or opportunity to be heard and intentionally delayed the option of a post-deprivation hearing until after the sale of 725 Mountain View was lost.

Following receipt of the Code Enforcement Notice, the Owners attempted to appeal the unlawful directive numerous times through counsel. [Doc 21 ¶ 70]. However, it was not until February 4, 2022, nearly four months after receipt of the Notice and numerous attempts to reach resolution, that the Owners received any sort of substantive response from the City that partially admitted that the directives in the Code Enforcement Notice were erroneous. [*Id.* ¶¶ 71-72]. This systematic and unnecessary delay caused the Owners to lose the sale of 725 Mountain View. [*Id.* at ¶¶ 73-74]. This was a failure to provide notice and an opportunity to be heard at a meaningful time and in a meaningful manner as required. *See Fuentes*, 407 U.S. at 80. Because the Owners have adequately alleged lack of procedural due process for a their property interest, the City's Motion to Dismiss Count VIII must be denied.

**F.** **Defendants tortiously interfered with business and contractual relations**

The City erroneously alleges that the Owners did not identify the "third parties" in Count III with whom the City interfered with business relations. However, the Owners sufficiently identified that the "third parties" were renters of 725 Mountain View who were no longer able to enter contractual and/or business relations with the Owners. [Doc. 21 ¶¶ 94-95]. The City also attempts to lump all of the tortious interference claims together, but does not challenge that the Owners adequately identified the contractual relations underlying Count IV and Count V.

33

The City makes the extraordinary assertion that the use of the phrase "as alleged above" immediately subjects these counts to dismissal. First, there is no legal authority for that claim. Second, the Owners incorporated by reference all of the preceding paragraphs in each of these counts. [*Id.* ¶¶ 90, 97,106]. Third, the Owners include in each count a list of malicious acts perpetrated by Tate and Wilson-Britt. [*Id.* ¶¶ 94, 103, 112]. The City's also argues that the Owners' did not adequately plead that Wilson-Britt and Tate engaged in improper action or wrongful conduct. [Doc. 26-1, p. 26]. As discussed in detail above, the Owners provided comprehensive factual allegations showing malice and intentional wrongful conduct. Therefore, the City's motion to dismiss the tortious interference claims in Count III, IV, and V should be denied.

**G.** **The City did not move to dismiss the Owners' claim for declaratory relief so this claim automatically survive a motion to dismiss**

Section H of The City's Motion to Dismiss is titled "Plaintiffs' Claims for a Permanent Injunction and Declaratory Relief Fail as a Matter of Law," however, the actual argument under the heading does not mention declaratory relief at all. [Doc. 26-1 p. 23]. Therefore, Count XIV – Declaratory Judgment remains unchallenged in motion to dismiss and this argument is waived. *See U.S. v. Dicter*, 198 F.3d 1284, 1289 (11th Cir.1999) (issue raised for first time in reply brief waived).

**H.** **The Owners have adequately pled the need for a permanent injunction**

34

To obtain a permanent injunction, a plaintiff must show (1) that he has suffered an irreparable injury; (2) that his remedies at law are inadequate; (3) that the balance of hardships weighs in his favor; and (4) that a permanent injunction would not disserve the public interest. *Barrett v. Walker Cnty. Sch. Dist.,* 872 F.3d 1209, 1229 (11th Cir. 2017). The City erroneously alleges that the Owners' cannot show irreparable harm and are not currently suffering any hardship because the City has confirmed it is legal to rent 725 Mountain View for periods of more than 15 days. As discussed, the City is still wrongful alleging that it is illegal to rent the property for 15 days or less. Therefore, the Owners are still suffering hardship. Also, the irreparable harm the Owners are experiencing is the damage to the reputation of their Airbnb business. However, the City would experience no hardship and it certainly would not disserve public interest if the City was enjoined from wrongfully misusing its own ordinances to interfere with the Owners' business and sale of their property. Therefore, Count XV survives the motion to dismiss.

## CONCLUSION

Based on the foregoing, this Court should deny the Motion to Dismiss in full against Wilson-Britt and Tate. This Court should deny the Motion to Dismiss in full against the City of Gainesville, except for the City of Gainesville's argument that sovereign immunity bars the Counts in Footnote 1 above.

Respectfully submitted this 1st day of November, 2022.

                                        PARKER POE ADAMS &
                                        BERNSTEIN LLP


                                        */s/ David L. Pardue*
                                        David L. Pardue
                                        Georgia Bar No.: 561217
                                        Brian D. Stoltz
                                        Georgia Bar No.:648725

1075 Peachtree St. NE, Suite 1500
Atlanta, Georgia 30309
(678) 690-5726
davidpardue@parkerpoe.com

*Counsel for Plaintiffs*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing document has been prepared with one of the font and point selections approved by this Court in Local Rule 5.1(C).

This 1st day of November, 2022.

PARKER POE ADAMS &
BERNSTEIN LLP

*/s/ David L. Pardue*
David L. Pardue
Georgia Bar No.: 561217

1075 Peachtree St. NE, Suite 1500
Atlanta, Georgia 30309
(678) 690-5726
davidpardue@parkerpoe.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a true and correct copy of the foregoing upon counsel of record, via the Court's CM/ECF system, which will automatically send service to counsel of record.

This 1st day of November, 2022.

PARKER POE ADAMS &
BERNSTEIN LLP

*/s/ David L. Pardue*
David L. Pardue
Georgia Bar No.: 561217

1075 Peachtree St. NE, Suite 1500
Atlanta, Georgia 30309
(678) 690-5726
davidpardue@parkerpoe.com

*Counsel for Plaintiffs*