## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

**FARRAH M. FARR, PHILLIP BROWN, and KRISTOF & COMPANY, INC.,**

**Plaintiffs,**

**v.**

**KOMMERINA DALING, JOHN O'SULLIVAN, SARAH WILSON-BRITT, in her individual and official capacity, MATT TATE, in her individual and official capacity, THE CITY OF GAINESVILLE, GEORGIA,**

**Defendants.**

**CIVIL ACTION FILE**

**No. 2:22-CV-00133-SCJ**

## <u>ORDER</u>

This matter appears before the Court on Defendants Sarah Wilson-Britt's, Matt Tate's, and the City of Gainesville, Georgia's ("Motion Defendants") Motion to Dismiss Plaintiff's Complaint. Doc. No. [17].[1] And Motion Defendants' Motion

---

[1] All citations are to the electronic docket unless otherwise noted, and all page numbers are those imprinted by the Court's docketing software.

to Dismiss the First Amended Complaint. Doc. No. [26]. To which, Plaintiffs responded in opposition (Doc. No. [34]), and the Motion Defendants replied in support (Doc. No. [36]). This Motion is now ripe for review.

## I.   BACKGROUND

The Court derives the following statement of facts from Plaintiffs' First Amended Complaint. Doc. No. [21]. Plaintiff Dr. Brown owns the property located at 725 Mountain View Circle, Gainesville, Georgia 30501 (the "Property"). Doc. No. [21], ¶ 12. Dr. Brown has owned the Property since 2021. Id. ¶ 13. Dr. Brown and Plaintiff Ms. Farr are engaged. Id. ¶ 14. Ms. Farr, through Plaintiff Kristof & Co., rents the Property using third-party rental websites such as Airbnb and VRBO. Id. ¶ 15.

Ms. Daling and Mr. O'Sullivan own the house next door to the Property. Id. ¶ 19. Ms. Daling and Mr. O'Sullivan also rent their property to third parties. Id.

In May 2019, Ms. Farr spoke with Mr. Tate, the City of Gainesville's Community Economic Development Deputy, regarding whether it is legal to rent the Property. Id. ¶¶ 29; 16. Mr. Tate told Ms. Farr that it was legal to rent the

Property and that there were no restrictions on the length of the rental. Id. ¶ 17. Plaintiffs subsequently rented out the Property.

On July 11, 2020, Ms. Farr was near the pool at the Property. Id. ¶ 20. Unbeknownst to her, Mr. O'Sullivan was observing her. Id. Ms. Farr then went inside the Property to take a shower. Id. ¶ 21. Shortly thereafter, Ms. Farr observed a man pressed against the window while she was completely undressed. Id. ¶ 23. The Property's Ring Security Camera ("Ring Camera") recorded Mr. O'Sullivan walking to the Property's front door and then toward the side of the house. Id. Then, Mr. O'Sullivan was captured on the back deck as he peered into the window. Id. ¶ 22. Following that incident, Ms. Farr has not returned to the Property for fear for her safety. Id. ¶ 26. On July 16, 2020, Dr. Brown told Mr. O'Sullivan never to enter his property or peer into the windows again. Id. ¶ 27.

After the incident, Mr. O'Sullivan emailed Mr. Tate stating that "there was a 'very big house advertised for weddings, music venues, and parties etc.; amplified music, noise, mid-day fireworks; etc.'" Id. ¶¶ 29; 30. Mr. Tate responded, stating that he "can have code enforcement investigate the matter if you have a specific address." Id. ¶ 31.

3

Mr. Tate directed Ms. Wilson-Britt, another City of Gainesville employee, to drive through the Property's driveway multiple times while renters were staying there. Id. ¶ 36. Between July 27, 2020 and July 30, 2020, a City of Gainesville employee drove through the Property's driveway. Id. ¶ 37. As a result of Ms. Daling's behavior and the City of Gainesville employees coming to the Property, the renters left the Property early, and Kristof & Co. lost "a significant amount of money." Id. ¶ 38.

At the end of July 2020, a family rented the Property. Id. ¶ 33. On July 27, 2020 and July 28, 2020, Ms. Daling approached the children renting the Property on two separate occasions. Id. ¶ 34. The renters called to complain to Ms. Farr about the interactions. Id.

In August 2020, a family from New York rented the Property. Id. ¶ 41. Ms. Daling complained that the renters were too loud. Id. Ms. Daling also approached the children at the dock and demanded to know what they were doing there. Id. On September 3, 2021, Ms. Daling got into a verbal fight with renters. Id. ¶ 47.

In addition to the interactions with renters, in July 2020, Ms. Daling or Mr. O'Sullivan made an allegedly false fraud complaint to Expedia.com regarding

4

the Property, and Expedia.com removed the Property from their website. Id. ¶ 40.

Mr. O'Sullivan and Ms. Daling allegedly enlisted their close friends to email Mr. Tate to "falsely represent" that Plaintiffs were using the Property as a venue for events and that fireworks were being shot from the Property. Id. ¶ 44–45.

On July 23, 2021, Dr. Brown listed Property for sale. Id. ¶ 46. On September 20, 2021, Dr. Brown received a verbal cash offer for the Property. Id. ¶¶ 48; 49. On September 23, 2021, Dr. Brown and the Buyer executed a contract to sell the Property. Id. ¶ 49. On October 15, 2021, Ms. Wilson-Britt sent a notice to Dr. Brown stating that the City of Gainesville Code Enforcement would issue a citation if the Property listings were not removed from all rental websites (the "Notice"). Id. ¶ 51. The Notice stated that Lodging Services were not allowed in R-1 zoning districts, and the Property was located in a R-1 zoning district. Id. ¶ 53. Lodging Services are defined in Table 9-6-1 of the City of Gainesville Unified Land Development Code, which is in the nonresidential zoning district section of the Code and reads: "[a] facility offering shelter accommodations, or place for such shelter, to the public for a fee for 15 days or less in one or more rooms within

the same facility, with provisions for living, sanitation, and sleeping. Includes hotels and motels." City of Gainesville, Ga., Unified Land Dev. Code § 9-6-1-2, Table 9-6-1 (2022) [2]. As a result, Plaintiffs removed the Property from rental websites. Id. ¶ 65.

After Plaintiffs received the Notice, Plaintiffs informed Buyer of the Notice. Id. ¶ 63. The Buyer decided not to close the sale because it intended to rent the Property. Id. ¶ 64.

On February 4, 2022, the Director of Community and Economic Development for the City of Gainesville provided Plaintiffs' counsel with a letter confirming the City does not prohibit Plaintiffs from listing the Property for rental for fifteen days or more. Id. ¶ 72. Since receiving the letter, Plaintiffs have not successfully sold the Property. Additionally, the City of Gainesville continues to threaten citations and fines if Plaintiffs rent the Property for fifteen days or less. Id. ¶ 160.

On July 8, 2022, Plaintiffs filed this Action against Defendants. Doc. No. [1]. On August 15, 2022, Motion Defendants moved to dismiss Plaintiffs' Initial

---

[2]   City of Gainesville, Ga., Unified Land Dev. Code § 9-6-1-2, Table 9-6-1 (2022), https://www.gainesville.org/170/Codes-Guidelines.

Complaint. Doc. No. [17]. On September 13, 2022, Plaintiffs filed their First Amended Complaint. Doc. No. [21]. Thus, making the Amended Complaint the operative complaint. On September 27, 2022, Motion Defendants filed their Motion to Dismiss the Amended Complaint (hereinafter "Complaint"). Doc. No. [26].

Motion Defendants moved to dismiss all of Plaintiffs' claims against them. Doc. No. [26]. Plaintiffs responded in opposition. Doc. No. [34]. Motion Defendants replied in support of their Motion to Dismiss. Doc. No. [36].

## II.    LEGAL STANDARD

A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (explaining "only a complaint that states a plausible claim for relief survives a motion to dismiss"); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 561–62, 570 (2007) (retiring the prior Conley v. Gibson, 355 U.S. 41,45–46 (1957) standard which provided that in reviewing the sufficiency of a complaint, the complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"). "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. In Iqbal, the Supreme Court reiterated that although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. In Twombly, the Supreme Court emphasized that a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. (internal citations and emphasis omitted).

## III.   ANALYSIS

### A.   Motion to Dismiss the Initial Complaint

Motion Defendants' Motion to Dismiss the Initial Complaint (Doc. No. [17]) is denied as moot. After Motion Defendants filed their Motion to Dismiss the Initial Complaint, Plaintiffs filed their First Amended Complaint. The Motion Defendants' Motion to Dismiss the Initial Complaint is rendered moot by the later-filed Amended Complaint. See Malowney v. Fed. Collection Deposit Grp.,

193 F.3d 1342, 1345 n.l (11th Cir. 1999) (noting that "[a]n amended complaint supersedes a previously filed complaint"); Santiago v. Taguar Therapeutics, LLC, No. 17-22749-CV, 2019 WL 4731980, at *1 (S.D. Fla. Jan. 17, 2019) ("Plaintiffs filing of the Second Amended Complaint superseded the Amended Complaint and rendered moot the parties' previous pleadings stemming from the Amended Complaint"); Cordell v. Pacific Indem., No. 4:05CV167-RLV, 2006 WL 1935644, at *4 (N.D. Ga. July 11, 2006) (finding that "the defendants' motion for partial summary judgment . . . which was filed prior to the filing of the Second Amended Complaint is rendered moot"). Accordingly, the Motion Defendants' Motion to Dismiss the Initial Complaint (Doc. No. [17]) is denied as moot.

## B.   Section 1983 Federal Claims

The Court dismisses Plaintiffs' § 1983 claim because it is a shotgun pleading. "District courts have inherent authority to dismiss a complaint on shotgun pleading grounds." Sarhan v. Miami Dade College, 800 F. App'x 769, 772 (11th Cir. 2020) (citing Viber Micro, Inc. v. Shabanets, 878 F.3d 1291, 1295 (11th Cir. 2018)); see also Gabriel v. Windy Hill Foliage Inc., No. 21-12901, 2022 WL 2288687, at *2 (11th Cir. June 24, 2022) ("[D]istrict Courts may *sua sponte* dismiss a complaint on shotgun pleading grounds . . . ."). A shotgun pleading is

a complaint that violates either Federal Rule of Civil Procedure 8(a)(2) or Rule 10(b), or both. Weiland v. Palm Beach Cty. Sheriff's Off., 792 F.3d 1313, 1320 (11th Cir. 2015). Rule 8(a)(2) requires the complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 10(b) requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). "If doing so would promote clarity," Rule 10(b) also mandates that "each claim founded on a separate transaction or occurrence . . . be stated in a separate count . . . ." Id. The "self-evident" purpose of these rules is "to require the pleader to present his claims discretely and succinctly, so that[ ] his adversary can discern what he is claiming and frame a responsive pleading." Weiland, 792 F.3d at 1320 (quoting T.D.S. Inc. v. Shelby Mut. Ins. Co., 760 F.2d 1520, 1544 n.14 (11th Cir. 1985) (Tjoflat, J., dissenting)). These rules were also written for the court's benefit, which must determine "which facts support which claims," "whether the plaintiff has stated any claims upon which relief can be granted," and whether the evidence introduced at trial is relevant. Id. (quoting T.D.S., 760 F.2d at 1544 n.14 (Tjoflat, J., dissenting)).

10

Shotgun pleadings "are flatly forbidden by the spirit, if not the letter, of these rules" because they are "calculated to confuse the 'enemy,' and the court, so that theories for relief not provided by law and which can prejudice an opponent's case, especially before the jury, can be masked." Id. (alterations adopted) (quoting T.D.S., 760 F.2d at 1544 n.14 (Tjoflat, J., dissenting)). Besides violating the rules, shotgun pleadings also "waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts." Vibe Micro, 878 F.3d at 1295 (alterations adopted) (internal quotation marks omitted). Courts have "little tolerance" for them. Id.

Shotgun pleadings include complaints that: (1) "contain multiple counts where each count adopts the allegations of all preceding counts"; (2) do not re-allege all the proceeding counts but are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) do not separate each cause of action or claim for relief into separate counts; or (4) in a multi-defendant action, contain counts that present a claim for relief without specifying which claim applies to which defendant. Weiland, 792 F.3d at 1321–23. Plaintiffs' Section 1983 claims commit two of these cardinal sins. First, they,

11

as with every cause of action, "incorporate[] by reference the preceding paragraphs as if fully set forth herein." Doc. No. [21], ¶ 124. In doing this, Plaintiffs have incorporated allegations unrelated to their federal causes of action into their federal § 1983 claims. For example, Plaintiffs incorporated claims for trespass and nuisance into their federal § 1983 claim; however, the nuisance and trespass causes of action only involve factual allegations concerning Ms. Daling and Mr. O'Sullivan and have no connection to the federal § 1983 claims. Id. ¶¶ 82–89.

Plaintiffs' Complaint also commits the cardinal sin of failing to separate each cause of action into separate counts. This is particularly egregious in its federal § 1983 claims. Plaintiffs argue that Plaintiffs "pled three separate violations under Section 1983 . . . . These are three separate and independent claims." Doc. No. [34], 5. Plaintiffs argue that Motion Defendants failed to discuss the Equal Protection Claim and the First Amendment claim; therefore, the Court cannot dismiss those causes of action. Id. Although Plaintiffs argue that these causes of action are separate and independent, Plaintiffs pled them in one count of their Complaint. Specifically, Plaintiffs pled,

> Defendants actions as described above, including but not limited to forcing Plaintiffs to remove their

> advertisements of 725 Mountain View from rental websites, unlawfully restricting Plaintiffs ability to lawfully rent their property located at 725 Mountain View, threatening to issue citations and fines for non-compliance, misapplying and/or misinterpreting the ULDC, arbitrarily applying the ULDC, and not treating similarly situated individuals in the same manner (1) deprived Plaintiffs of their 14th Amendment Constitutional rights and constitutes deprivation of property without due process of law, U.S. Const. amend. 14; (2) deprived Plaintiffs of their 14th Amendment rights of equal protection under the law, U.S. Const. amend. 14; and/or (3) deprived Plaintiff[s] of their First Amendment constitutional rights to freedom of speech. U.S. Const. amend. 1,   Defendants actions were not rationally related to a legitimate state interest.

Doc. No. [21], ¶ 125.

As an initial matter, Plaintiffs appear to plead their federal § 1983 claims in the disjunctive. See Doc. No. [21], ¶ 125 (emphasis added)

> (1) deprived Plaintiffs of their 14th Amendment Constitutional rights and constitutes deprivation of property without due process of law, U.S. Const. amend. 14; (2) deprived Plaintiffs of their 14th Amendment rights of equal protection under the law, U.S. Const. amend. 14; *and/or* (3) deprived Plaintiff[s] of their First Amendment constitutional rights to freedom of speech. U.S. Const. amend. 1.

Thus, it is unclear from the face of the Complaint what constitutional claims are being alleged. Plaintiffs are entitled to plead in the alternative so long as, in doing

13

so, they do not create ambiguity. Fed. R. Civ. P. 8(d). Using the term "and/or" in pleadings often creates ambiguities. See United States v. Bush, 70 F.3d 557, 562 (10th Cir.1995) (explaining that the use of "and/or" is strongly disfavored because it creates unnecessary ambiguity); Joe Hand Promotions, Inc. v. Creative Entm't, LLC, 978 F. Supp. 2d 1236, 1240 (M.D. Fla. 2013) (explaining that the "usage of several 'and/or' conjunctions among other ambiguities" make the allegations vague and ambiguous); J&J Sports Prods., Inc. v. Torres, No. 6:09-cv-391, 2009 WL 1774268, at *3 (M.D. Fla. June 22, 2009) (finding the use of "and/or" unacceptable when it was used three times in one sentence and raised the possibility that the defendant's employee—rather than defendant—was liable for the alleged offensive act).

Here, the Court finds that this paragraph is ambiguous. Plaintiffs use "and/or" twice, Plaintiffs use "and" once in the paragraph, and Plaintiffs seemingly allege three different constitutional violations. The Court finds that Plaintiffs' usage of "and/or" renders this paragraph ambiguous as it is unclear whether the constitutional violations are alleged in the conjunctive, disjunctive, or alternative.

14

Additionally, how Plaintiffs pled this cause of action creates confusion about which facts apply to which alleged constitutional violation. Motion Defendants seemed to struggle with ascertaining the constitutional violations being alleged against them because they moved to dismiss a substantive due process claim, which seemingly was not alleged against them. However, Motion Defendants do not address the Equal Protection or First Amendment claims in their Motion. Doc. No. [26-1], 18–20. Thus, the manner in which Plaintiffs pled their federal § 1983 claims is confusing and does not comply with Rule 10's clarity requirement.

Because Plaintiffs' federal § 1983 claim is an impermissible shotgun pleading, the Court dismisses this claim without prejudice. See Vibe Micro, 878 F.3d at 1296 ("When a litigant files a shotgun pleading, is represented by counsel and fails to request leave to amend, a district court must sua sponte give him one chance to re-plead before dismissing his case with prejudice on non-merits shotgun pleading grounds."). Accordingly, Plaintiffs' federal § 1983 claims are dismissed and may be re-pled in accordance with Rules 8 and 10 of the Federal Rules of Civil Procedure.

## C.    Sovereign Immunity

The Court finds that the City of Gainesville is entitled to sovereign immunity from monetary damages for all of Plaintiffs' state law claims. "Under the Georgia Constitution, municipalities are protected by sovereign immunity unless waived by the General Assembly." Ga. Const. of 1983, Art. IX, Sec. II, Par. IX. "As governmental bodies, the counties [and cities] of this State are entitled to sovereign immunity and, thus, are not subject to suit for any cause of action unless provided for by statute." Coleman v. Glynn Cty., 344 Ga. App. 545, 549 (2), 809 S.E.2d 383 (2018). Plaintiffs do not dispute that the City of Gainesville is entitled to sovereign immunity. Doc. No. [34], 4 n.4. "We repeatedly have held that plaintiffs cannot amend their complaint through a response to a motion to dismiss." Burgess v. Religious Tech. Ctr., Inc., 600 F. App'x 657, 665 (11th Cir. 2015) (citing Rosenberg v. Gould, 554 F.3d 962, 967 (11th Cir. 2009)). Plaintiffs cannot dismiss their state claims for damages against the City of Gainesville through their Response brief. Nonetheless, the Court finds that the claims should be dismissed because the City of Gainesville enjoys sovereign immunity. As such,

Plaintiffs' state law claims for damages against the City of Gainesville are dismissed.

### D.    Section 1983 Georgia Constitution Claim

Plaintiffs' § 1983 claim, pursuant to the Georgia Constitution, is due to be dismissed. 42 U.S.C. § 1983 only applies to claims brought under the United States Constitution or the laws of the United States. See 42 U.S.C. § 1983 (emphasis added) ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of *any rights, privileges, or immunities secured by the Constitution and laws*); Lodge v. Barry, 2010 WL 11493788, at *2 (N.D. Ga. Mar. 9, 2010) ("Section 1983 only applies to federal or constitutional law under color of state law."). Additionally, the Georgia Supreme Court noted that "Georgia does not have a statutory cause of action like 42 USC § 1983 under which a person can assert claims under the Georgia Constitution. Gardei v. Conway, 313 Ga. 132, 138–39, 868 S.E.2d 775, 780 (2022). Accordingly, Plaintiffs' Section 1983 Georgia Constitution claim is dismissed for failure to state a claim.

17

**E.**     **Official Immunity**

The Court finds that Mr. Tate and Ms. Wilson-Britt are entitled to official immunity only from damages from Plaintiffs' negligence claims. Mr. Tate and Ms. Wilson-Britt do not enjoy official immunity for the remaining State law claims. Pursuant to Article I, Section II, Paragraph IX of the Georgia Constitution, "public officers and employees "may be held personally liable for negligence relating to their official duties only when performing 'ministerial' acts; 'discretionary' acts are only subject to suit when performed with actual malice or intent to cause injury." Mommies Props, LLC v. Semanson, 880 S.E.2d 376, 383 (Ga. Ct. App. 2022) (citing Williams v. Dekalb Cty., 308 Ga. 265, 278 (4) (c), 840 S.E.2d 423 (2020)).

Mr. Tate's and Ms. Wilson-Britt's actions were discretionary and not ministerial.

> A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned

> conclusions, and acting on them in a way not specifically
> directed.

Grammens v. Dollar, 287 Ga. 618, 619, 697 S.E.2d 775, 777 (2010) (citations

omitted). Plaintiffs argue that Mr. Tate and Ms. Wilson-Britt are not entitled to

official immunity because they negligently performed their ministerial duties of

investigating the claims regarding city ordinance violations and erroneously

applied zoning ordinances. Doc. No. [34], 13–14.

The Court finds that investigating code violations and interpreting code

provisions are discretionary functions because they require "deliberation and

judgment," examination of facts, and reaching conclusions. Roper v. Greenway.

294 Ga. 112, 116, 751 S.E.2d 351 (2013). Compare McDowell v. Smith, 285 Ga. 592,

593–594, 678 S.E.2d 922 (2009) (holding the written policy requiring school

employees to follow certain procedures to authorize the child's release is a

ministerial act); Meagher v. Quick, 264 Ga. App. 639, 643, 594 S.E.2d 182 (2003)

(holding the written policy (OCGA § 17–4–20.1(c)) requiring officers to complete

a written family violence report is a ministerial act); Nelson v. Spalding Cty., 249

Ga. at 336, 290 S.E.2d 915 (1982) (holding the written policy requiring plaintiffs

to place or replace traffic signs after being notified of the need is a ministerial

act); Wanless v. Tatum, 244 Ga. App. 882, 884, 536 S.E.2d 308 (2000) (holding the

19

written policy requiring employees receiving complaints to make a written record of it and for the complaint to be investigated is a ministerial act); Lincoln County v. Edmond, 231 Ga. App. 871(2), 501 S.E.2d 38 (1998) (holding the county's policy requiring that warnings of the downed tree's presence be erected and the tree removed is a ministerial act); with Schaeffer v. Kearney, 355 Ga. App. 449, 451, 844 S.E.2d 515, 517 (2020) (holding examination of municipal citations and factual allegations upon which they were based and determining whether charges should attach are discretionary acts); Campbell v. Goode, 304 Ga. App. 47, 49, 695 S.E.2d 44, 45 (2010) (holding an officer's decision to investigate suspicious activities is a discretionary function); Tittle v. Corso, 256 Ga. App. 859, 861, 569 S.E. 2d 873, 876 (2002) (holding officers investigation of a 'shots fired' call is a discretionary function). Accordingly, Mr. Tate's and Ms. Wilson-Britt's actions in allegedly investigating Ms. Daling and Mr. O'Sullivan's claims and construing the Code are discretionary acts.

The Court finds that Mr. Tate and Ms. Wilson-Britt do not have official immunity from Plaintiffs' claims for tortious interference with business relations and with contractual relations claims because Plaintiffs alleged that Mr. Tate and Ms. Wilson-Britt acted with actual malice when committing the violations. "The

doctrine of official immunity offers public officers and employees limited protection from suit in their personal capacity. Official immunity protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without willfulness, malice, or corruption." Everson v. Dekalb Cty. Sch. Dist., 344 Ga. App. 665, 667, 811 S.E.2d 9, 12 (2018). "[D]iscretionary' acts are only subject to suit when performed with actual malice or intent to cause injury." Mommies Props., 800 S.E.2d at 383. "Actual malice, in the context of official immunity, means a deliberate intention to commit a wrongful or illegal act." Tittle, 256 Ga. App. at 862, 569 S.E.2d at 876. It does not, however, include "implied malice," that is, "the reckless disregard for the rights or safety of others." Murphy v. Bajjani, 282 Ga. 197, 203, 647 S.E.2d 54, 60 (2007).

### 1.   *Tortious Interference Claims*

Plaintiffs allege that Mr. Tate and Ms. Wilson-Britt maliciously interfered with their ability to sell and rent the Property. Doc. No. [21], ¶¶ 93, 102, 111. Specifically, Plaintiffs allege that

> Malicious acts of Tate and Wilson-Britt include, but are not limited to (1) working in concert with Defendants O'Sullivan and Daling to intentionally interfere with Plaintiffs contractual and business relationships with

21

> their renters; (2) following the notice provided by
> O'Sullivan to Tate the dates that Plaintiffs would have
> renters, Tate directed Wilson-Britt and/or another City
> of Gainesville Code enforcement employee to drive
> through Plaintiff's driveway from July 27, 2020 to July
> 30, 2020 in an effort to harass and intimidate Plaintiffs'
> renters; (3) Tate directed Wilson-Britt to send the Code
> Enforcement Notice intentionally misrepresenting that
> Table 9-6-1 was applicable to R-1 zoning districts and
> intentionally misstating the definition of lodging
> services; and (4) Tate directed Wilson-Britt to send the
> Code Enforcement Notice unlawfully directing
> Plaintiffs to remove 725 Mountain View from rental
> websites.

Id. ¶¶ 94, 102, 111. Motion Defendants argue that Plaintiffs failed to plead actual malice because the alleged "actions are directly related to the employee['s] interpretation, application, and enforcement of the City's land use regulations." Doc. No. [26], 12. Additionally, Motion Defendants argue that the allegations are best interpreted as flawed judgment. Doc. No. [36], 8. The Court disagrees.

Plaintiffs allege that Mr. Tate and Ms. Wilson-Britt did more than innocently, negligently, or recklessly misinterpret code provisions; Plaintiffs specifically allege that Mr. Tate and Ms. Wilson-Britt maliciously interfered with Plaintiffs' ability to rent and sell the Property by "intentionally misrepresented" zoning codes and harassing and intimidating Plaintiffs' renters. Id. ¶¶ 93–94;

22

101–02; 110–11. Plaintiffs alleged that Mr. Tate's actions were motivated by his prior relationship with Mr. O'Sullivan. Id. ¶ 29. Additionally, Plaintiffs pled that Mr. Tate and Ms. Wilson-Britt worked with Mr. O'Sullivan and Ms. Daling to interfere with Plaintiffs' contractual and business relationships in retaliation for Dr. Brown requesting that Mr. O'Sullivan refrains from trespassing on his property and invading Ms. Farr's privacy. Id. ¶¶ 29; 94. Thus, Plaintiffs have not simply pled that Mr. Tate and Ms. Wilson-Britt negligently or recklessly misinterpreted the Gainesville ordinance; rather, they allege that Mr. Tate and Ms. Wilson-Britt "deliberat[edly] intent[ed] to commit a wrongful or illegal act," — i.e., tortiously interfering with a business relationship. Tittle, 256 Ga. App. at 862, 569 S.E.2d at 876.

Accepting all facts in the Complaint as true, these alleged intentional actions are sufficient to show actual malice in interfering with Plaintiffs' business and contractual relationships. See Bailey v. Wheeler, 843 F.3d 473, 486 (11th Cir. 2016) (holding that allegations that officers targeted plaintiff because plaintiff reported law enforcement officers for racial profiling was sufficient to defeat official immunity at the motion to dismiss stage); Robinson v. Smith, 4:14-CV-149 (CDL), 2015 WL 4193269, at *4 (M.D. Ga. July 10, 2015) (finding that defendants

were not entitled to official immunity where plaintiff alleged that defendant verbally expressed an intent to harm plaintiff and defendant knowingly took actions that increased the risk of plaintiff being abused). Accordingly, the Court finds that at the motion to dismiss stage Mr. Tate and Ms. Wilson-Britt do not have official immunity from Plaintiffs' tortious interference claims.

Mr. Tate and Ms. Wilson-Britt are also not entitled to official immunity on the civil conspiracy claims. Plaintiffs allege that the civil conspiracy was "to interfere with Plaintiff's contractual and business relationships." Doc. No. [21], ¶ 139. Because the Court found that Plaintiffs sufficiently pled actual malice to support their tortious interference claims, the Court finds that the derivative civil conspiracy claim also meets the actual malice standard. Accordingly, the Court finds that Mr. Tate and Ms. Wilson-Britt are not entitled to official immunity for the civil conspiracy claim.

### 2.    *Remaining State Law Claims*

The Court finds that Mr. Tate and Ms. Wilson-Britt are not entitled to official immunity for Plaintiffs' "intentional misrepresentation claim. [3] Actual

---

[3] There is no cause of action for intentional misrepresentation under Georgia law. However, there is a claim for fraudulent misrepresentation, which requires a showing

malice is defined as the deliberate intention to commit a wrongful act. Tittle, 256 Ga. App. at 862, 569 S.E.2d at 876. Plaintiffs allege that Motion Defendants intentionally misrepresented that Plaintiffs were using the Property as a Lodging Service and intentionally misrepresented that Table 9-6-1 applied to the Property. Doc. No. [21], ¶ 150. Because Plaintiffs pled that Mr. Tate and Ms. Wilson-Britt intentionally misrepresented the law to Plaintiffs, the Court finds that, as pled, the misrepresentations were made with actual malice. Thus, Mr. Tate and Ms. Wilson-Britt are not entitled to official immunity on the fraudulent misrepresentation claim.

The Court finds that Mr. Tate and Ms. Wilson-Britt have immunity from monetary damages for the negligence claims. Unlike the above causes of action, the allegations regarding Plaintiffs' negligence claims do not allege malice or a deliberate intention to do wrong. As stated above, "[a]ctual malice, in the context of official immunity, means a deliberate intention to commit a wrongful or illegal

_____

that defendant made a representation that it knew to be false at the time it was made. When ruling on a motion to dismiss, the "Court looks beyond the captions and labels in a complaint to the content and substance of the allegations." Paramo v. IMICO Brickell, LLC, No. 08-20458-CIV, 2008 WL 4360609, at *7 (S.D. Fla. Sept. 24, 2008); see also Byrd v. City of Daphne, No. CA-11-0468-CG-C, 2012 WL 1036058, at *6 (S.D. Ala. Mar. 9, 2012) ("'the substance of the Plaintiff's claim is what matters, not how he labels it.'") (citation omitted).

act." <u>Tittle</u>, 256 Ga. App. at 862, 569 S.E.2d at 876. Under Georgia law, "[n]egligence is conduct which falls below the standard established by law for the protection of others against this risk." <u>Weller v. Blake</u>, 315 Ga. App. 214, 219, 726 S.E.2d 698, 702. Nothing in the ordinary definition of negligence shows a deliberate intention to commit a wrongful act.

Additionally, Plaintiffs' negligence claims do not specifically allege that Mr. Tate and Ms. Wilson-Britt intentionally misread the statute and, with malice, threatened to fine Plaintiffs pursuant to said statute. Thus, the Court finds that Plaintiffs' negligence claims are barred by official immunity. <u>See</u> <u>Sommerfied v. Blue Cross & Blue Shield of Ga., Inc.</u>, 235 Ga. App. 375, 377, 509 S.E2d 102 (1998) (trial court did not err in granting summary judgment because public official "was entitled to assert official immunity as a defense to a claim of negligent conduct.").

In summary, Mr. Tate and Ms. Wilson-Britt enjoy official immunity for Count XI (negligence) and Count XIII (negligent misrepresentation); thus, Counts XI and XIII are dismissed against them. The Court denies Mr. Tate's and Ms. Wilson-Britt's Motion to Dismiss as to Count XII (intentional misrepresentation),

because they do not enjoy official immunity for that intentional misrepresentation claim.

### F.   **Substantive State Law Claims**

#### 1.   *Tortious Interference Claims*

Plaintiffs sufficiently alleged their tortious interference with a business relationship claim. "Tortious interference with business relations is a distinct and separate tort from that of tortious interference with contractual relations, although some of the elements of the two torts are similar." Sweet City Landfill, LLC v. Lyon, 352 Ga. App. 824, 833, 835 S.E.2d 764, 774 (2019) (citations and quotations omitted).

Under Georgia law, a plaintiff may sustain a claim for tortious interference with business relations where the plaintiff establishes:

> (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

<u>Metro Atlanta Task Force for the Homeless, Inc. v. Ichthus Cmty. Tr.</u>, 298 Ga. 221, 230, 780 S.E.2d 311, 321 (2015) (citations omitted). "An essential element of a tortious interference with business relations claim 'is that the alleged tortfeasor induced a third party or parties not to enter into or continue a business relationship with the plaintiff.'" <u>Sweet City Landfill, LLC</u>, 352 Ga. App. at 834, 835 S.E.2d at 774 (citations omitted).

First, Motion Defendants argue that Plaintiffs' tortious interference claim should be dismissed because Plaintiffs did not specifically identify the third parties. Doc. No. [26-1], 25–26. Second, Motion Defendants' conduct was not improper or wrongful. <u>Id.</u> Third, Motion Defendants were exercising their rights under the Code. <u>Id.</u> at 26. The Court disagrees.

First, Plaintiffs were not required to specifically name their third-party or potential renters to sufficiently allege a tortious interference claim. <u>See</u> <u>Quality Auto Painting Ctr. Of Roselle, Inc. v. State Farm Indem. Co.</u>, 917 F.3d 1249, 1275–76 (11th Cir. 2019) (finding that failing to name the customers does not constitute a failure to identify specific third parties). Specifically, the Eleventh Circuit reasoned

> it is not the potential customer who is the target of the alleged tortious interference; it is the targeted body shop.

28

> A potential customer may—but very well may not—tell the Body Shop that he was steered away. On the other hand, each Insurance Company, or its claim adjusters, will know whether the company engages in such a practice, and will know whether each named Plaintiff in the five complaints was noncompliant with the company's preferred practices and, most important, whether its insured were steered away from that Plaintiff Body Shop.

Id. Like Quality Auto Painting, the renters or potential renters are not the targets of the alleged tortious interference. Pursuant to Plaintiffs' Complaint, potential renters were steered away, in part, because it removed the Property from rental websites. Id. ¶ 94. Like in Quality Auto Painting, the potential renters may not have known why they were steered away from the Property, but Mr. Tate and Ms. Wilson-Britt did know that their actions would steer potential renters away from renting the Property. Accordingly, the Court finds that Plaintiffs', generally, pleading "third party renters" did not violate Rule 8's notice requirement.

Second, the Court finds that Plaintiffs sufficiently pled that Mr. Tate and Ms. Wilson-Britt acted improperly or engaged in wrongful conduct without privilege. Plaintiffs alleged that Defendants intentionally misrepresented that the Code prohibited Plaintiffs from renting the Property. Doc. No. [21], ¶ 94. The Court finds that this satisfies the pleading requirement for wrongful conduct

because it was improper or wrongful conduct. Additionally, the Court finds that Plaintiff acted without privilege. "Privilege means a legitimate or bona fide economic interest of the defendant or a legitimate relationship of the defendant with the contracts, which caused the defendant not to be considered a stranger, interloper, or meddler, to the contract." Culpepper v, Thompson, 254 Ga. App. 596, 571–72, 562 S.E.2d 837, 840 (2002).

Motion Defendants do not provide any case law to support that a municipality has a legitimate interest in maliciously or intentionally misreading a Code provision that divests a property owner of their property interest. Conversely, under Georgia law, a property owner has a constitutionally vested right in the zoning ordinances that were in place when they purchased their property that "preclude[s] retroactive application of a *zoning* ordinance." Goldrush II v. City of Marietta, 267 Ga. 683, 698, 482 S.E.2d 347, 360 (1997). Here, Plaintiffs alleged that the zoning ordinance that restricted short-term rentals did not apply to them and, at a minimum, did not apply to them when they purchased their property. Doc. No. [21], ¶¶ 53–55. Thus, the Court finds that Motion Defendants did not have a legitimate interest in taking away one of Plaintiffs' constitutionally protected rights.

30

Motion Defendants also did not provide the Court with any case law supporting that they had a bona fide economic interest in the Property's rental contracts. In the cases where the courts found that a municipality had a bona fide economic interest in a contract, the city itself was a necessary component. See Cox v. City of Atlanta, 266 Ga. App. 329, 332–33, 596 S.E.2d 785, 788 (2004) (holding the City of Atlanta was not a stranger to the contract because the contracted security services were to be provided by off-duty Atlanta Police Department officers and served under the capacity of the chief of the Atlanta Police Department); Felcor Lodging Ltd. P'ship v. City of College Park, 1:03-cv-0753-WSD, 2005 WL 8154324, at *7 (N.D. Ga. Aug. 2, 2005) (holding Atlanta was not a stranger to the lease agreement once Atlanta became an owner of the property). Here, there is no allegation that the City of Gainesville or its employees were necessary parties to the rental process or that the City of Gainesville had an economic interest in the Property. The Court finds that Mr. Tate and Ms. Wilson-Britt were strangers to the business relationships between Plaintiffs and the potential renters. Accordingly, Plaintiffs sufficiently alleged their tortious interference with a business relations claim.

The Court finds that Plaintiffs also sufficiently alleged her tortious interference with a contractual relationship claim. "Tortious interference claims, whether asserting interference with contractual relations [or] business relations, . . . share certain common essential elements: (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or their parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff." Gordon Document Prod., Inc. v. Serv. Techs., Inc., 308 Ga. App. 445, 449, 708 S.E.2d 48, 53 (2011)

The difference between a tortious interference with a business relationship claim and a tortious interference with a contractual relationship claim is that "[a] cause of action for intentional interference with contractual rights must be based on the intentional and non-privileged interference by a third party with existing contractual rights and relations." Sweet City Landfill, LLC, 352 Ga. App. at 834, 835 S.E.2d at 774 (citations and quotations omitted). "[T]he courts of this state have recognized that such interference with a contractual right or relationship

32

need not result in a breach of the contract to be actionable. It is sufficient if the invasion retards performance of the duties under the contract or makes the performance more difficult or expensive." <u>Artrac Corp. v. Austin Kelley Advert., Inc.</u>, 197 Ga. App. 772, 774–75, 399 S.E.2d 529, 532 (1990).

Plaintiffs pled that Defendants interfered with two contracts. First, Mr. Tate's and Ms. Wilson-Britt's actions interfered with Plaintiffs' Purchase Agreement. Doc. No. [21], ¶¶ 97–105. Plaintiffs alleged they had to report the Notice to the Buyer, which stated that Plaintiffs and the Buyer could not rent the Property for less than fifteen days pursuant to the Code. <u>Id.</u> ¶ 63. And "[b]ecause the Buyer intended to purchase 725 Mountain View and rent it out for periods of more than 15 days on such rental websites as VRBO and Airbnb, the Buyer decided not to close the sale as a direct result of the letter from Ms. Wilson-Britt, the City of Gainesville Code Enforcement Manager, threatening a citation if the property was not removed from all rental websites." <u>Id.</u> ¶ 64.[4] The Court finds that the Notice directly caused the Buyer to terminate the purchase agreement

---

[4] The Court notes that the Complaint seems to have a factual inconsistency. The Notice seems to apply to rentals for fifteen days or less. Doc. No. [21], ¶ 53. And the Buyer's reason for terminating the contract was because he wanted to rent the Property for a period of fifteen days or more. <u>Id.</u> ¶ 64. Plaintiffs do not appear to have alleged that the Notice prohibited them from renting the Property for 15 days or more.

because the Buyer intended to rent the Property for periods exceeding fifteen days. Id. Accordingly, the Court finds that Plaintiffs successfully alleged that Mr. Tate and Ms. Wilson-Britt interfered with their purchase agreement.

The Court also finds that Plaintiffs successfully alleged that Mr. Tate and Ms. Wilson-Britt interfered with their rental agreements. Plaintiffs alleged that Defendants interfered with the rental agreements where Defendants harassed the individuals and families renting the Property. Id. ¶ 107. Plaintiffs allege that Ms. Wilson-Britt or another employee from the City of Gainesville "drove through Plaintiffs['] driveway . . . in an effort to harass and intimidate Plaintiffs' renters." Id. ¶ 37. Additionally, "due to City of Gainesville Code Enforcement driving through the driveway on a daily basis[,] . . . these guests left early, which cost Kristof & Co. a significant amount of money." Id. ¶ 38. The Court finds that these assertion sufficiently allege that Mr. Tate's and Ms. Wilson-Britt's actions made the performance of the rental contracts more expensive because renters left the property early, which decreased the amount that Plaintiffs received for the rental. Id. Accordingly, the Court finds that Plaintiffs successfully alleged that Mr. Tate and Ms. Wilson-Britt interfered with their rental contracts

Thus, the Court finds that Count III (tortious interference with business relations), Count IV (tortious interference with contractual relations- purchase agreement), and Count V tortious interference with contractual relations- rental agreement) survive Motion Defendants' Motion to Dismiss.

### 2.  *Remaining State law claims*

Although Motion Defendants moved to dismiss all of Plaintiffs' claims (Doc. No. [26]), Motion Defendants have not argued to dismiss the remaining state law claims on their merits. Thus, the Court finds that Motion Defendants moved to dismiss the remaining state law claims solely based upon various immunities. Because the Court found that Mr. Tate and Ms. Wilson-Britt do not enjoy official immunity from Count X (civil conspiracy) and Count XII (intentional misrepresentation) at this stage of the litigation, those counts survive as to Mr. Tate and Ms. Wilson-Britt.

### G.  **Relief**

### 1.  *Permanent Injunction*

The Court finds that Plaintiffs' claim for permanent injunctive relief, as it relates to the Motion Defendants, is due to be dismissed. Plaintiffs sought injunctive relief "restraining all Defendants from interfering with Plaintiffs

35

lawful right to rent 725 Mountain View and from interfering with any purchase agreements to sell 725 Mountain View." Doc. No. [21], ¶ 163. Motion Defendants argued that this claim should be dismissed because there is no irreparable harm because "they resolved their claims with the City on February 4, 2022."Doc. No. [26], 24. Second, Plaintiffs have an adequate remedy at law in the form of a writ of certiorari in State court. Id. Finally, there is no hardship because a City employee clarified that Plaintiffs could rent the Property. Id. Plaintiffs responded by arguing that there is irreparable harm because "the City is still wrongful [sic] alleging that it is illegal to rent the property for 15 days or less." Doc. No. [34], 35. Additionally, Plaintiffs are experiencing the hardship of the damage to their reputation for Airbnb, and the City has no hardship in being enjoined from erroneously applying the Code. Id. 34–35.

"A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v.

MercExchange, L.L.C., 547 U.S. 388, 391, 126 S. Ct. 1837, 1839, 164 L. Ed. 2d 641 (2006)

Plaintiffs' request for injunctive relief regarding renting the Property is inappropriate because Plaintiffs have an adequate remedy at law. Under Georgia law, a plaintiff may seek a writ of certiorari to challenge a zoning determination or to seek a variance from a zoning determination. City of Cumming v. Flowers, 300 Ga. 820, 834, 797 S.E.2d 846, 857 (2017) (citing O.C.G.A. § 5-4-1). The Georgia Supreme Court held that a plaintiff is not entitled to injunctive relief from a zoning decision because "[a] n injunction is an equitable remedy available only when 'no adequate remedy is provided at law.' OCGA § 9-5-1. In this case, a petition for certiorari provided that adequate legal remedy." Id. at 835, 797 S.E.2d at 858. Thus, the Court finds that Plaintiffs have an adequate remedy at law in the form of a writ of certiorari and are precluded from injunctive relief.

Accordingly, Plaintiffs' claim for injunctive relief against the Motion Defendants is dismissed.

## 2.   *Declaratory Judgment*

The Court finds that Plaintiffs have adequately pled their declaratory judgment claim, in part. Motion Defendants argued that Plaintiffs declaratory

37

judgment claim should be dismissed because "[n]o future risk is present here." Doc. No. [26], 24. The Court finds that Plaintiffs' claim for declaratory judgment is due to be partially dismissed. Plaintiff seeks "a declaratory judgment stating that Plaintiffs are permitted to rent out 725 Mountain View for any length of time." Doc. No. [21], ¶ 161. Plaintiff pled that it already has confirmation from the City of Gainesville that it may rent the Property for fifteen days or more. Id. ¶ 72; Doc. No. [21-7]. "[F]ederal courts . . . do not render advisory opinions . . . . [T]he question in each case is whether the facts alleged, under all circumstances, show that there is a substantial controversy between the parties having adverse legal interests, of sufficient immediacy any reality to warrant the issuance of a declaratory judgment." Golden v. Zwickler, 394 U.S. 103, 108 (1969). Because no immediate controversy exists over whether Plaintiffs may rent the Property for fifteen days or more, declaratory judgment is improper.

However, Plaintiffs also pled that they continue to be harmed because Motion Defendants are "misappl[ying] and misinterpret[ing] [ ] its own ordinances by restricting the right to rent property for periods of 15 days or less and threatening citations and fines." Doc. No. [21], ¶ 160. There remains an immediate controversy over whether the ordinance restricts Plaintiffs from

renting the Property for fifteen days or less. Thus, Plaintiffs have sufficiently alleged that they are entitled to a declaratory judgment on that issue.

### 3.    *Punitive Damages and Attorney's Fees*

Although Motion Defendants moved to dismiss all of Plaintiffs' claims (Doc. No. [26]), Motion Defendants have not argued to dismiss Count XVI (punitive damages) or Count XVII (attorney's fees) on the merits. Because Motion Defendants did not substantively move to dismiss Plaintiffs' requests for punitive damages and attorney's fees the Court finds that Plaintiff's request for punitive damages and attorney's fees remain.

## IV.   CONCLUSION

For the foregoing reasons, the Court **DENIES AS MOOT** Defendants City of Gainesville's, Sarah Wilson-Britt's, and Matt Tate's Motion to Dismiss Plaintiff's Initial Complaint. Doc. No. [17].

Additionally, the Court **GRANTS IN PART AND DENIES IN PART** Defendants City of Gainesville's, Sarah Wilson-Britt's, and Matt Tate's Motion to Dismiss Plaintiff's Amended Complaint. Doc. No. [26]. Count VIII (Section 193 U.S. Constitution), Count IX (Section 1983 Georgia Constitution), Count XI (Negligence), Count XIII (Negligent Misrepresentation), and Count XV

(Permanent Injunction) are **DISMISSED WITHOUT PREJUDICE** as to City of Gainesville, Sarah Wilson-Britt, and Matt Tate.

Count III (Tortious Interference with Business Relations); Count IV (Tortious Interference with Contractual Relations-Purchase Agreement); Count V (Tortious Interference with Contractual Relations-Rental Agreements); Count X (Civil Conspiracy); Count XII (Intentional Misrepresentation) are **DISMISSED WITHOUT PREJUDICE** as to the City of Gainesville.

The Court **DENIES** Matt Tate and Sarah Wilson-Britt's Motion to Dismiss as to Count III (Tortious Interference with Business Relations); Count IV (Tortious Interference with Contractual Relations-Purchase Agreement); Count V (Tortious Interference with Contractual Relations-Rental Agreements); Count X (Civil Conspiracy); Count XII (Intentional Misrepresentation).

Count XIV is **DISMISSED IN PART**. Plaintiffs' claims with respect to whether Plaintiffs may rent the Property for fifteen days or more is **DISMISSED**. The Court **DENIES** the Motion to Dismiss Count XIV as it relates to whether Plaintiffs may rent the Property for fifteen days or less.

The Court **DENIES** the Motion to Dismiss Count XVI (Punitive Damages) and Count XVII (Attorney's Fees).

In accordance with this Order, Plaintiffs may amend their Complaint within **TWENTY-ONE (21) DAYS** of the entry of this Order. If Plaintiffs do not amend their Complaint, Defendants are **ORDERED** to file their Answer within **THIRTY-FIVE (35) DAYS** of the entry of this Order. If Plaintiffs do amend their Complaint, Defendants are **ORDERED** to Answer or otherwise respond to the Second Amended Complaint within **FOURTEEN (14) DAYS** of the filing of the Second Amended Complaint.

The Parties are **ORDERED** to file their Initial Disclosures, Corporate Disclosures, and Joint Preliminary Report and Discovery Plan within **FOURTEEN (14) DAYS** of the entry of this Order. Additionally, the Court stays discovery until Defendants City of Gainesville, Sarah Wilson-Britt, and Matt Tate file their Answer.

**IT IS SO ORDERED** this ___14th___ day of February, 2023.

_____
**HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE**

41