## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

FARRAH M. FARR, PHILLIP BROWN, and
KRISTOF & COMPANY, INC.

        Plaintiffs,

v.

KOMMERINA DALING, JOHN
O'SULLIVAN, SARAH WILSON-BRITT, in
her individual and official capacity, MATT
TATE, in his individual and official capacity,
and THE CITY OF GAINESVILLE,
GEORGIA,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CIVIL ACTION NO.

2:22-CV-00133-SCJ

JURY TRIAL DEMANDED

## SECOND AMENDED COMPLAINT FOR DAMAGES, DECLARATORY RELIEF AND PERMANENT INJUNCTIVE RELIEF

COME NOW Farrah M. Farr ("Ms. Farr" or "Farrah"), Phillip Brown, M.D. ("Dr. Brown" or "Phillip"), and Kristof & Company, Inc. ("Kristof & Co."), Plaintiffs in the above-referenced action (collectively, "Plaintiffs") and file this Second Amended Complaint for Damages, Declaratory Relief, and Permanent Injunctive Relief against Kommerina Daling ("Daling"), John O'Sullivan ("O'Sullivan"), Sarah Wilson-Britt, in her official and individual capacity ("Wilson-Britt"), Matt Tate, in his official and individual capacity ("Matt Tate"), and City of

Gainesville, Georgia ("Gainesville") (collectively, "Defendants"), respectfully showing the Court as follows:

<u>**PARTIES AND JURISDICTION**</u>

1.

Plaintiff Farrah M. Farr is a resident of the State of California.

2.

Plaintiff Phillip Brown, M.D. is a resident of the State of Florida.

3.

Plaintiff Kristof & Co. is a Delaware corporation.

4.

Defendants Kommerina Daling and John O'Sullivan are residents of the State of Georgia, Hall County, and reside at and may be served with summons and a copy of the complaint at 724 Honeysuckle Road, Gainesville, Georgia, 30501.

5.

Defendant Sarah Wilson-Britt is a resident of the State of Georgia, Jackson County, and resides at and may be served with summons and a copy of the complaint at 89 Melvin Drive, Jefferson, GA 30549-6718.

6.

Defendant Matt Tate is a resident of the State of Georgia, Hall County, and resides at and may be served with summons and a copy of the Complaint at 4619 Enfield Drive, Gainesville, GA 30506.

7.

Defendant City of Gainesville Georgia may be served with summons and a copy of the complaint through Mayor Warren Samuel Couvillon, 300 Henry Ward Way, Suite 303, Gainesville, GA 30501.

8.

This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because the above-referenced action poses a federal question.  Accordingly this Court also has subject matter jurisdiction over the claims brought under state law under 28 U.S.C. § 1367 because said claims are so related to the claims made under federal law that they form part of the same case or controversy under Article III of the U.S. Constitution.

9.

In addition or in the alternative, the Court has subject matter jurisdiction over all claims brought herein under 28 U.S.C. § 1332 as the amount in controversy

exceeds $75,000, exclusive of interest and costs and is between citizens of different states.

10.

The Court has jurisdiction over the Defendants in the above-referenced action because (i) as to the individually-named Defendants, they are residents of the State of Georgia; and (ii) as to the City of Gainesville, it is a municipality incorporated and existing under the laws of the State of Georgia.

11.

Venue is proper in the United States District Court for the Northern District of Georgia, Gainesville Division because the property at issue is located in Gainesville, Georgia and the facts and circumstances forming the basis for this civil action occurred in Gainesville, Georgia.

## **FACTUAL BACKGROUND**

12.

Dr. Brown owns the property located at 725 Mountain View Circle, Gainesville, GA 30501 ("725 Mountain View").

13.

Dr. Brown has owned 725 Mountain View since 2012.

14.

Ms. Farr and Dr. Brown are engaged.

15.

Ms. Farr rents 725 Mountain View through Kristof & Co. to third parties on rental sites such as Airbnb and Vrbo.

16.

Prior to listing 725 Mountain View on any rental websites, Ms. Farr called the City of Gainesville to ask if it was legal to rent 725 Mountain View on rental websites. Matt Tate returned Ms. Farr's phone call in or around May 2019.

17.

During this phone call, Tate informed Ms. Farr that it was legal to rent property on rental websites in the City of Gainesville and that there were no restrictions on the length of the rental period or any other restrictions. According to Mr. Tate, he even looked up her address and confirmed there were no issues with listing 725 Mountain View on rental websites.

18.

Tate also informed Ms. Farr of certain requirements for sprinkler systems and other features if the number of guests was above a certain amount.

19.

O'Sullivan and Daling own the property next door to 725 Mountain View at 715 Mountain View Circle, Gainesville, GA 30501 ("715 Mountain View") and rent this property to third parties. Upon information and belief, 715 Mountain View is not and has never been during the relevant time period, the primary residence of O'Sullivan and Daling.

20.

On July 11, 2020, Ms. Farr was staying at 725 Mountain View, relaxing by the pool, swimming, and doing yoga. Upon information and belief, but unbeknownst to Ms. Farr at the time, O'Sullivan was observing her.

21.

Ms. Farr went inside 725 Mountain View to take a shower and very shortly thereafter, the Ring Security Camera recorded O'Sullivan walking up to Ms. Farr's front door and then walking towards the side of the house. A screenshot from the Ring doorbell camera depicts this below.



22.

O'Sullivan only waited by the front door for a brief moment before walking

around to the back of the house. He then went onto the back deck and peered into

the window. A screenshot from the Ring Security Camera depicts this below.



23.

Ms. Farr observed a man with his face pressed against the sliding glass door peering into 725 Mountain View and staring at Ms. Farr while she was completely undressed in her home

24.

Ms. Farr screamed, and O'Sullivan ran off of Ms. Farr's back deck into the wooded area behind 725 Mountain View.

25.

After viewing the Ring Security Camera footage, Dr. Brown confirmed that the man Ms. Farr observed leering at her through the window was O'Sullivan.

26.

Ms. Farr has not returned to 725 Mountain View by herself since the date O'Sullivan violated her privacy in this manner out of fear for her safety. This was an extremely traumatizing event for Ms. Farr.

27.

On July 16, 2020, Dr. Brown, encountered O'Sullivan outside in the neighborhood and told O'Sullivan to never enter his property or peer into the windows ever again.

28.

This simple request to refrain from violating Ms. Farr's privacy began a campaign of harassment from Daling and O'Sullivan as well as the City of Gainesville, City of Gainesville Code Enforcement, Matt Tate, and Sarah Britt-Wilson.

29.

On July 17, 2020, the day after Dr. Brown requested that O'Sullivan refrain from trespassing on his property and invading Ms. Farr's privacy, O'Sullivan emailed Matt Tate, the Community and Economic Development Deputy of Gainesville, Georgia. O'Sullivan has a pre-existing relationship with Tate dating back over a decade. [1]

30.

In the email to Tate, O'Sullivan falsely represented that there was a "very big house advertised for weddings, music venues, and parties etc.; amplified music, noise, mid-day fireworks; etc." See July 17, 2020-July 22, 2020 email thread attached hereto as **Exhibit A** p. 3.

---

[1] In 2011, Tate and O'Sullivan were both involved in the Gainesville 2030 Comprehensive Plan Community Assessment. Matt Tate was on the Project Management Team for the Assessment and O'Sullivan was part of the Comprehensive Planning Task Force. See Excerpt from Gainesville 2030 Comprehensive Plan attached hereto as **Exhibit B**.

31.

Tate informed O'Sullivan that he "can have code enforcement investigate the matter if you have a specific address." Exhibit A, p. 2.

32.

O'Sullivan told Tate that the property at issue was 725 Mountain View and requested an investigation. O'Sullivan included links to the Airbnb and Vrbo listing for 725 Mountain View and again alleged that Ms. Farr and Dr. Brown were "advertising for weddings and being a music venue etc. The last six weeks, its lots of noise, fireworks in the middle of the day…" and states "if we could address the underlying misadventure of the new business and look forward, that would be great…" Exhibit A p. 1.

33.

In July, 2020, a family rented 725 Mountain View on AirBnb. O'Sullivan was monitoring the Airbnb calendar and informed Tate that "According to the Airbnb calendar, the next set of renters will arrive tomorrow, 7/24/20." Exhibit A, p. 1.

34.

On July 27th and July 28th, according to the family renting 725 Mountain View, Daling approached the children of the family renting 725 Mountain View on two separate occasions. The renters called Ms. Farr complaining that an older

woman in a canoe screamed at their kids. The renters called again to report that the same older woman came up through the woods to the dock at 725 Mountain View and again screamed at their children while the children were fishing off the dock.

35.

Daling texted Ms. Farr on July 28, 2020 stating that she was talking to the renters and that they claim to be Airbnb renters but she does not know if she should trust them because she thought Ms. Farr was in the house. See Text Message from Daling to Ms. Farr on July 28, 2020 attached hereto as **Exhibit F**. Daling's representation that she thought Ms. Farr was at 725 Mountain View and she does not know if she should trust that these are AirBnb renters is highly unlikely considering her husband emailed Tate to inform him that a group of Airbnb renters were scheduled to arrive at 725 Mountain View on July 24, 2020.

36.

Upon information and belief, Tate directed Wilson-Britt or another employee from City of Gainesville Code Enforcement to drive through Plaintiffs driveway multiple times while Tate was aware that Plaintiff had renters staying at 725 Mountain View.

37.

From July 27, 2020 to July 30, 2020, Wilson Britt or another employee from City of Gainesville Code Enforcement drove through Plaintiffs driveway at 725 Mountain View daily (and on July 29 more than once during the day) in an effort to harass and intimidate Plaintiffs' renters. A screenshot from the Ring doorbell camera depicts this below.



38.

These guests no longer felt safe staying at 725 Mountain View due to Daling confronting their children on more than one occasion and due to City of Gainesville Code Enforcement driving through the driveway on a daily basis. As a result, these guests left early, which cost Kristof & Co. a significant amount of money.

39.

This was one of many instances in which families renting 725 Mountain View reported that  Daling harassed them. This conduct caused financial damages as well as damage to Plaintiffs' reputation and the reputation of 725 Mountain View as a rental property.

40.

In July, 2020, the listing of 725 Mountain View was removed from Expedia.com. Upon information and belief, Daling and/or O'Sullivan made a false fraud complaint to Expedia.com.[2]

41.

In August 2020, a family from New York was renting 725 Mountain View. Daling complained that the renters were loud. According to the renters, Daling approached their kids at the dock demanding to know what they were doing there and asking if they were related to Ms. Farr.

---

[2] Fraud complaints, when used properly, are used on Expedia.com to allege that a home is being listed by someone who is not the owner.

42.

O'Sullivan and Daling also enlisted third parties in the neighborhood to make false complaints against 725 Mountain View in an effort to bolster their efforts to tortuously interfere with Plaintiffs' business and contracts.

43.

Upon information and belief, O'Sullivan and Daling enlisted their close personal friend who also lived in the neighborhood to email Tate in order to falsely represent that Plaintiffs were using 725 Mountain View as a venue for events.

44.

In his email, O'Sullivan and Daling's friend falsely states that fireworks were being shot from 725 Mountain View, however, these fireworks originated from this individual's own neighbor on the opposite side of the cove from 725 Mountain View.

45.

This neighbor also submitted a complaint through Airbnb stating that his dog was nervous due to these fireworks and, again, falsely alleging that the fireworks were shot from 725 Mountain View.

46.

On July 23, 2021, Dr. Brown listed 725 Mountain View for sale.

47.

On September 3, 2021, Daling got into a "verbal fight" with renters at 725 Mountain View for simply taking their boat out onto the lake. <u>See</u> Text Message sent by Kommerina Daling to Dr. Brown attached hereto as **Exhibit D.**

48.

On September 20, 2021, Plaintiff received a verbal offer from a buyer (the "Buyer") to purchase 725 Mountain View.

49.

On September 23, 2021, Plaintiff and the Buyer executed a contract for the sale of 725 Mountain View for $2,700,000.00 cash offer, with no contingencies and with a closing 45 days later.

50.

Defendants' were aware that Dr. Brown listed 725 Mountain View for sale and knew the property was under contract and knew to whom it was under contract.

51.

On October 15, 2021, Sarah Wilson-Britt, the City of Gainesville Code Enforcement Manager, sent a notice to Dr. Brown alleging that 725 Mountain View was being used for lodging services and threatening to issue a citation if the property was not removed from all rental websites such as VRBO and Airbnb. ("Code

Enforcement Notice"). <u>See</u> October 15, 2021 Correspondence attached hereto as **Exhibit E**.

52.

Upon information and belief, Tate directed Wilson-Britt to send the Code Enforcement Notice.

53.

The Code Enforcement Notice alleged that "'Lodging Services' is defined in Table 9-6-1 of the City's Unified Land Development Code as a facility that offers shelter accommodations to the public for 15 days or less for a fee" and that "lodging services is not allowed in an R-1 zoning district."

54.

In the Code Enforcement Notice, Wilson-Britt left out a key part of the definition of lodging services in Table 9-6-1, which states "A facility that offers temporary (fifteen (15) days or less *in one room*) shelter accommodations or place for such shelter, open to the public for a fee. Includes hotels and motels." Article 9-6, Table 9-6-1 of the City of Gainesville Unified Land Development Code ("ULDC"). (emphasis added).

-16-

55.

Tate and Wilson-Britt knew or should have known that Table 9-6-1 only applied to "Nonresidential Zoning Districts" and, therefore, was not applicable to residential zoning districts such as R-1 zoning districts. <u>See</u> Article 9-6 of the ULDC.

56.

Tate and Wilson-Britt also knew or should have known that the definition of lodging services does not apply to renting an entire residential dwelling, as opposed to offering temporary shelter accommodations in one room.

57.

Tate and Wilson-Britt knew or should have known that it was not unlawful for Plaintiffs to rent 725 Mountain View for any period of time and/or that it was not unlawful to list property on rental websites such as AirBnb and VRBO.

58.

The ULDC states that "whenever a violation of this Code...is alleged to have occurred, any person may file a written complaint with the designated code enforcement officer of the city...The designated code officer *shall* record properly such complaint, investigate, and take action thereon as may be appropriate to enforce this Code." See ULDC Sec. 9-24-2-1.

59.

Upon information and belief, the City of Gainesville has policies and procedures governing investigating complaints regarding alleged code violations and enforcing compliance with the city code. Tate and/or Wilson-Britt maliciously and/or negligently failed to follow these policies and procedures.

60.

Plaintiffs had a valid property interest in lawfully renting 725 Mountain View on rental websites and were deprived of this right without rational basis.

61.

At all relevant times, Plaintiffs had a valid First Amendment interest in advertising the rental of 725 Mountain View on rental websites.  The City of Gainesville, Sarah Wilson-Britt, and/or Matt Tate violated the Plaintiffs' clearly established constitutional rights by engaging in the facts alleged herein, and they, along with Defendants Daling and O'Sullivan engaged in an unlawful civil conspiracy to deprive Plaintiffs of their constitutional rights.

62.

No representative from City of Gainesville Code Enforcement ever attempted to contact Dr. Brown or Ms. Farr to conduct any type of investigation into O'Sullivan's claims.

63.

Tate and Wilson-Britt were aware that it was not illegal or against any city ordinances to rent property in an R-1 zoning district and/or list a property in the City of Gainesville on rental websites such as VRBO and Airbnb. Plaintiff had no choice but to report this letter to the Buyer under contract for the property at 725 Mountain View.

64.

Because the Buyer intended to purchase 725 Mountain View and rent it out for periods of more than 15 days on such rental websites as VRBO and Airbnb, the Buyer decided not to close the sale as a direct result of the letter from Wilson-Britt, the City of Gainesville Code Enforcement Manager, threatening a citation if the property was not removed from all rental websites.

65.

Because Dr. Brown was told he had to remove 725 Mountain View from rental websites, Plaintiffs were unable to rent the property and, as a result, Kristof & Co. lost rental income from the property.

66.

Matt Tate, Sarah Wilson-Britt, or any other representative of the City of Gainesville  never conducted any investigation into Daling and O'Sullivan's false

claims regarding 725 Mountain View prior to or after sending the October 15 Correspondence.

67.

Prior to or after sending the October 15 Correspondence wrongfully threatening to issue a citation if 725 Mountain View was not removed from rental websites, neither Matt Tate, Sarah Wilson-Britt, or any other representative of the City of Gainesville ever contacted Ms. Farr or Dr. Brown to conduct any investigation or to discuss Daling and O'Sullivan's claims.

68.

Before sending the October 15 Correspondence to Dr. Brown, City of Gainesville and Code Enforcement had never threatened any other homeowners with a citation for renting properties on rental websites such as VRBO and Airbnb, despite the fact that there were and are various properties in Gainesville listed for rent on such rental websites for periods of less than 15 days as well as periods of more than 15 days. Moreover, during this ordeal the City did not send correspondence to any other homeowners demanding that they remove their property from rental websites such as VRBO or Airbnb until November 22, 2021, at which time they sent out one letter to a third-party homeowner in an effort to cover the disparate treatment of Plaintiffs.

69.

Plaintiffs attempted to resolve the dispute with the City of Gainesville and Code Enforcement prior to the scheduled closing of the sale of 725 Mountain View. Even after the closing date passed and the Purchase Agreement was terminated, the Buyer expressed interest in purchasing 725 Mountain View if the dispute with the City could be resolved favorably.

70.

Plaintiffs continued to act diligently through counsel who contacted the City of Gainesville numerous times to appeal the unlawful directive and get confirmation from the City of Gainesville that it was legal to list 725 Mountain View on rental websites such as Vrbo and Airbnb.

71.

The City of Gainesville, through its representatives, systematically delayed any resolution until February 4, 2022.

72.

On February 4, 2022, Rusty Ligon, the Director of Community and Economic Development for the City of Gainesville, provided Plaintiffs' counsel with a letter confirming the City does not prohibit Plaintiffs from listing 725 Mountain View on

rental websites such as VRBO and Airbnb for time periods longer than 15 days. See February 4, 2022 Correspondence attached hereto as **Exhibit G**.

73.

By this time, however, the Buyer had invested elsewhere and was no longer interested in buying 725 Mountain View.

74.

Plaintiffs have continued to try to sell 725 Mountain View and have received no legitimate offers and most certainly no all cash offers like the contract the Defendants interfered with.

75.

In or around January-February, 2022, O'Sullivan and Daling went door-to-door in the neighborhood attempting to persuade neighbors to sign a petition to prevent Dr. Brown and Ms. Farr from lawfully renting 725 Mountain View and handed out an inflammatory flyer that implied that registered sex offenders could be renting 725 Mountain View. See Flyer attached hereto as **Exhibit C.**

76.

During this time, according to a third-party neighbor, O'Sullivan and two of his friends approached her and attempted to persuade her to sign a petition and made the false and inflammatory allegation that Ms. Farr and Dr. Brown were running a

"Jeffrey Epstein" type situation out of 725 Mountain View. Jeffrey Epstein was an American financier and convicted sex offender who, in a very high profile indictment, was charged with sexually exploiting and abusing dozens of minor girls at his home.

77.

Defendants intentionally conspired to interfere with Plaintiffs' lawful rental of 725 Mountain View and to interfere with the sale of 725 Mountain View.

78.

O'Sullivan and Daling's campaign of harassment has continued. On February 4, 2022, O'Sullivan or someone driving his vehicle drove by 725 Mountain View repeatedly for hours beginning before 9:00 am and even pulled into the driveway and revved the engine in an effort to intimidate and harass. In May 2022, Daling was creeping around in the wooded area right outside of the study window of 725 Mountain View. A screenshot from the Ring Security Camera and a photograph depict these events below.



79.

On or about February 8, 2022 Defendants Tate, Daling, and O'Sullivan had a meal together at Mellow Mushroom following a Gainesville Planning and Appeals Board meeting.

80.

Suits against public officials such as Tate and Wilson-Britt are not barred by official immunity if such officials negligently performed a ministerial task or acted with actual malice or an actual intent to cause injury while performing a discretionary duty. *Erickson v. Walker*, 359 Ga. App. 630, 632 (2021).

## COUNT I – TRESPASS (DALING, AND O'SULLIVAN)

### 81.

Plaintiffs hereby incorporate by reference the preceding paragraphs as if fully set forth herein.

### 82.

Defendants Daling and O'Sullivan have trespassed against Dr. Brown's property at 725 Mountain View.

### 83.

Daling and O'Sullivan's actions, as described more fully above, constitute trespass, including but not limited to (1) O'Sullivan entering Dr. Brown's property and peering into the window while Ms. Farr was in a state of undress and driving into Dr. Brown's driveway as well as loudly and intrusively revving his engine in Dr. Brown's driveway on multiple occasions; (2) and Daling entering Dr. Brown's property to harass renters.

### 84.

As a result of Defendants' trespass, Plaintiff has been damaged in an amount to be proven at trial, including but not limited to, actual damages, lost profits, damage to business reputation, expenses, reimbursements to third party renters, damages for emotional distress, inconvenience, and annoyance, and damages

resulting from significant and profound medical issues from which Plaintiff Farr is suffering resulting from this traumatic conduct.

## COUNT II –  NUISANCE (DALING AND O'SULLIVAN)

### 85.

Plaintiffs hereby incorporate by reference the preceding paragraphs as if fully set forth herein.

### 86.

Defendants Daling and O'Sullivan have continually harassed and interfered with Plaintiffs' enjoyment and use of 725 Mountain View.

### 87.

Defendants' acts and omissions that constitute nuisance, include but are not limited to (1) Defendant O'Sullivan driving onto Plaintiff's driveway and loudly and intrusively revving his engine early in the morning; (2) Defendant Daling approaching Plaintiffs' renters and harassing and intimidating them; and (3) O'Sullivan and Daling repeatedly making false claims to representatives of the City of Gainesville Code Enforcement leading to Code Enforcement driving through Plaintiffs' driveway on multiple occasions to harass and intimidate.

88.

As a result of Defendants' nuisance, Plaintiffs have been damaged in an amount to be proven at trial, including but not limited to lost profits, damage to business reputation, expenses, inconvenience, annoyance, and reimbursements to third party renters.

## COUNT III – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS (Daling, O'Sullivan, Tate, Wilson-Britt)

89.

Plaintiffs hereby incorporate by reference the preceding paragraphs as if fully set forth herein.

90.

As alleged above, Defendants Daling, O'Sullivan, Tate, and Wilson-Britt acted improperly and without privilege to interfere with Plaintiffs' lawful right to rent 725 Mountain View to renters.

91.

Defendants Daling, O'Sullivan, Tate, and Wilson-Britt acted purposely and with malice to interfere with Plaintiffs' ability to rent 725 Mountain View to cause injury to Plaintiffs.

92.

Malicious acts of Tate and Wilson-Britt include, but are not limited to (1) working in concert with Defendants O'Sullivan and Daling to intentionally interfere with Plaintiffs contractual and business relationships with their renters; (2) following the notice provided by O'Sullivan to Tate the dates that Plaintiffs would have renters, Tate directed Wilson-Britt and/or another City of Gainesville Code enforcement employee to drive through Plaintiff's driveway from July 27, 2020 to July 30, 2020 in an effort to harass and intimidate Plaintiffs' renters; (3) Tate directed Wilson-Britt to send the Code Enforcement Notice intentionally misrepresenting that Table 9-6-1 was applicable to R-1 zoning districts and intentionally misstating the definition of lodging services; and (4) Tate directed Wilson-Britt to send the Code Enforcement Notice unlawfully directing Plaintiffs to remove 725 Mountain View from rental websites.

93.

As a result, third party renters were unable to enter into or continue contractual and/or business relationships with Plaintiffs.

94.

As a result of Defendants' tortious interference with business relations, Plaintiffs have been damaged in an amount to be proven at trial, comprised of lost profits, lost business value, expenses, and other damages.

## COUNT IV – TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS – PURCHASE AGREEMENT (Daling, O'Sullivan, Tate, and Wilson-Britt)

95.

Plaintiffs hereby incorporate by reference the preceding paragraphs as if fully set forth herein.

96.

The Purchase Agreement for 725 Mountain View between Dr. Brown and the Buyer was a valid contract of which Defendants were aware and had knowledge.

97.

Dr. Brown had protectable rights and interests in the Purchase Agreement.

98.

As described in detail above, Defendants Daling, O'Sullivan, Tate, and Wilson-Britt acted improperly and without privilege to interfere with the Purchase Agreement.

99.

Defendants Daling, O'Sullivan, Tate, and Wilson-Britt acted purposely and with malice to interfere with the Purchase Agreement.

100.

Malicious acts of Tate and Wilson-Britt include, but are not limited to (1) colluding with Defendants O'Sullivan and Daling to intentionally interfere with Plaintiffs contractual relationship with the potential purchaser of 725 Mountain View; (2) Tate directed Wilson-Britt to send the Code Enforcement Notice intentionally misrepresenting that Table 9-6-1 was applicable to R-1 zoning districts and intentionally misstating the definition of lodging services; and (3) Tate directed Wilson-Britt to send the Code Enforcement Notice unlawfully directing one or more of the Plaintiffs to remove 725 Mountain View from rental websites.

101.

There is no justification for Defendants' actions.

102.

As a result of Defendants' tortious interference with contractual relations, Plaintiffs have been damaged in an amount to be proven at trial, comprised of lost profits, expenses, and other damages.

## COUNT V – TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS – RENTAL AGREEMENTS (DALING, TATE, AND WILSON-BRITT)

103.

Plaintiffs hereby incorporate by reference the preceding paragraphs as if fully set forth herein.

104.

The individuals and families renting 725 Mountain View from Kristof & Co. that were harassed by Defendants Daling, Tate, and/or Wilson-Britt have valid contracts with Kristof & Co. of which Defendants Daling, Tate, and/or Wilson-Britt were aware and had knowledge.

105.

Kristof & Co. had protectable rights and interests in these contracts.

106.

As alleged above, Defendants Daling, Tate, and/or Wilson-Britt acted improperly and without privilege to interfere with the contractual relationships between Kristof & Co. and individuals and families renting 725 Mountain View.

107.

Defendants Daling, Tate, and/or Wilson-Britt, acted purposely and with malice to interfere with contractual relationships between Kristoff & Co. and Renters.

108.

Malicious acts of Tate and Wilson-Britt include, but are not limited to (1) working in concert with Defendants O'Sullivan and Daling to intentionally interfere with Plaintiffs contractual and business relationships with their renters; (2) following the notice provided by O'Sullivan to Tate the dates that Plaintiffs would have renters, Tate directed Wilson-Britt and/or another City of Gainesville Code enforcement employee to drive through Plaintiff's driveway from July 27, 2020 to July 30, 2020 in an effort to harass and intimidate Plaintiffs' renters; (3) Tate directed Wilson-Britt to send the Code Enforcement Notice intentionally misrepresenting that Table 9-6-1 was applicable to R-1 zoning districts and intentionally misstating the definition of lodging services; and (4) Tate directed Wilson-Britt to send the Code Enforcement Notice unlawfully directing one or more of the Plaintiffs to remove 725 Mountain View from rental websites.

109.

There is no justification for Defendants' actions.

110.

Kristof & Co. has been damaged by Defendants' actions.

111.

As a result of Daling, Tate, and Wilson-Britt's tortious interference with contractual relations, Kristof & Co. has been damaged in an amount to be proven at trial, comprised of lost profits, reimbursements, expenses, loss of business value, and other damages.

## COUNT VI – INVASION OF PRIVACY – INTRUSION UPON SECLUSION (O'SULLIVAN)

112.

Plaintiffs hereby incorporate by reference the preceding paragraphs as if fully set forth herein.

113.

O'Sullivan invaded Ms. Farr's privacy and intruded upon her seclusion by peering into her window and watching her while she was undressed.

114.

Such conduct is highly offensive.

115.

As a result of O'Sullivan's invasion of Ms. Farr's privacy, Ms. Farr has suffered harm and O'Sullivan is liable for intrusion upon seclusion, including but

not limited to, damages for emotional distress, and damages resulting from significant and profound medical issues from which Plaintiff Farr is suffering resulting from this traumatic conduct.

## COUNT VII – FALSE LIGHT - INVASION OF PRIVACY – (O'SULLIVAN)

116.

Plaintiffs hereby incorporate by reference the preceding paragraphs as if fully set forth herein.

117.

O'Sullivan has created false publicity regarding Dr. Brown and Ms. Farr by alleging to third-party neighbors that Dr. Brown and Ms. Farr were running a "Jeffrey Epstein" type situation out of 725 Mountain View.

118.

Jeffrey Epstein was an American financier and convicted sex offender who, in a very high profile indictment, was charged with sexually exploiting and abusing dozens of minor girls at his home. It is highly offensive to a reasonable person to falsely allege that someone is creating a "Jeffrey Epstein" type situation on their property.

119.

Plaintiffs have been harmed by this conduct and O'Sullivan is liable for false light invasion of privacy for damages, including but not limited to, actual damages, damages to reputation, loss of business value, damages for emotional distress, and damages resulting from significant and profound medical issues from which Plaintiff Farr is suffering resulting from this conduct.

## COUNT VIII – § 1983 - U.S. CONSTITUTION – FOURTEENTH AMENDMENT (CITY OF GAINESVILLE, TATE, WILSON-BRITT)

120.

Plaintiffs hereby incorporate by reference the paragraphs 16-18, 28-33, 36-38, 46-74, 77, and 79 as if fully set forth herein.

121.

Defendants actions as described above, including but not limited to, demanding that Plaintiffs remove 725 Mountain View from rental websites, unlawfully restricting Plaintiffs ability to lawfully rent their property located at 725 Mountain View, threatening to issue citations and fines for non-compliance, misapplying and/or misinterpreting the ULDC, arbitrarily applying the ULDC, and not treating similarly situated individuals in the same manner deprived Plaintiffs of their 14th Amendment rights of equal protection under the law, U.S. Const. amend. 14.

122.

Before sending the October 15 Correspondence to Dr. Brown, City of Gainesville and Code Enforcement had never threatened any other homeowners with a citation for renting properties on rental websites such as VRBO and Airbnb, despite the fact that there were and are various properties in Gainesville listed for rent on such rental websites for periods of less than 15 days as well as periods of more than 15 days.  Moreover, during this ordeal the City did not send correspondence to any other homeowners demanding that they remove their property from rental websites such as VRBO or Airbnb until November 22, 2021, at which time they sent out one letter to a third-party homeowner in an effort to cover the unequal treatment of Plaintiffs.

123.

Defendants actions were not rationally related to a legitimate state interest.

124.

The above deprivation of rights caused by Defendants occurred under the color of law.

125.

Upon information and belief, Matt Tate and/or Sarah Wilson Britt possess final policy-making authority regarding code enforcement in the City of Gainesville.

126.

The City of Gainesville, Matt Tate, and Sarah Wilson-Britt deliberately and intentionally misapplied the ULDC ordinances under the color of law and deprived Plaintiffs of their Fourteenth Amendment rights under the U.S. Constitution.

127.

Defendants City of Gainesville, Tate, and Wilson-Britt are liable for damages under Section 1983 to Plaintiffs, including but not limited to damages for lost profits, expenses, loss of business reputation, emotional distress, and damages resulting from the loss of the Purchase Agreement.

## COUNT VIII – § 1983 - U.S. CONSTITUTION – FIRST AMENDMENT
## (CITY OF GAINESVILLE, TATE, WILSON-BRITT)

128.

Plaintiffs hereby incorporate by reference the paragraphs 16-18, 28-33, 36-38, 46-74, 77, and 79 as if fully set forth herein.

129.

Defendants actions as described above, including but not limited to forcing Plaintiffs to remove their advertisements of 725 Mountain View from all rental

websites, constituted a total ban on Plaintiffs' freedom of speech in violation of their First Amendment rights.

### 130.

These actions deprived Plaintiffs of their First Amendment constitutional rights to freedom of speech. U.S. Const. amend. 1, and Defendants actions were not rationally related to a legitimate state interest.

### 131.

The above deprivation of First Amendment rights caused by Defendants occurred under the color of law.

### 132.

Upon information and belief, Matt Tate and/or Sarah Wilson Britt possess final policy-making authority regarding code enforcement in the City of Gainesville.

### 133.

Upon information and belief, the City of Gainesville has an unofficial policy or custom of banning advertisements for rental properties on rental websites.

### 134.

The City of Gainesville, Matt Tate, and Sarah Wilson-Britt deliberately deprived Plaintiffs of their First Amendment rights under the U.S. Constitution.

135.

Defendants City of Gainesville, Tate, and Wilson-Britt are liable for damages under Section 1983 to Plaintiffs, including but not limited to damages for lost profits, expenses, loss of business reputation, emotional distress, and damages resulting from the loss of the Purchase Agreement.

**COUNT VIII – § 1983 - U.S. CONSTITUTION – DENIAL OF PROCEDURAL DUE PROCESS (CITY OF GAINESVILLE, TATE, WILSON-BRITT)**

136.

Plaintiffs hereby incorporate by reference the paragraphs 16-18, 28-33, 36-38, 46-74, 77, and 79 as if fully set forth herein.

137.

Defendants actions as described above, including but not limited to, unlawfully restricting Plaintiffs ability to lawfully rent their property located at 725 Mountain View, threatening to issue citations and fines for non-compliance, misapplying and/or misinterpreting the ULDC, and arbitrarily applying the ULDC, (1) deprived Plaintiffs of their 14th Amendment Constitutional rights and constitutes deprivation of property without procedural due process of law, U.S. Const. amend. 14.

138.

Defendants actions were not rationally related to a legitimate state interest.

139.

Plaintiffs have the right to use their property for any lawful purpose, including renting it to third parties, and the Code Enforcement Notice and the directives contained therein infringed on these rights.

140.

Plaintiffs have the right to rent their property for any length of time based on explicit mutual understandings with the City of Gainesville and Matt Tate and the Code Enforcement Notice and the directives contained therein infringed on these rights.

141.

The above deprivation of rights caused by Defendants occurred under the color of law.

142.

Upon information and belief, Matt Tate and/or Sarah Wilson Britt possess final policy-making authority regarding code enforcement in the City of Gainesville.

143.

Upon information and belief, the City of Gainesville, Tate, and/or Wilson-Britt had a policy and/or unofficial custom of misapplying Table 9-6-1 of the ULDC to residential zoning districts and/or misinterpreting the definition of "lodging services" to erroneously apply it to rental of entire residences.

144.

The City of Gainesville, Matt Tate and/or Sarah Wilson-Britt deliberately and intentionally misapplied the ULDC ordinances under the color of law and deprived Plaintiffs of their Fourteenth Amendment rights under the U.S. Constitution.

145.

Defendants City of Gainesville, Tate, and Wilson-Britt are liable for damages under Section 1983 to Plaintiffs for depriving Plaintiffs of their property rights without procedural due process, including but not limited to damages for lost profits, expenses, loss of business reputation, emotional distress, and damages resulting from the loss of the Purchase Agreement.

## COUNT X – CIVIL CONSPIRACY

### 146.

Plaintiff hereby incorporates by reference the preceding paragraphs as if fully set forth herein.

### 147.

Defendants were members of a common conspiracy. The object of the conspiracy was to accomplish an unlawful purpose: to interfere with Plaintiff's contractual and business relations.

### 148.

Defendants had a meeting of the minds to engage in the course of action described above in order to damage Plaintiffs.

### 149.

As described above, Defendants committed the overt acts of unlawfully interfering with Dr. Brown's contract to sell 725 Mountain View and Kristof & Co.'s contractual and business relations to lawfully rent 725 Mountain View.

### 150.

Plaintiffs suffered actual damages as a proximate result of Defendants' conduct. Plaintiffs also suffered emotional distress and damages resulting from significant and profound medical issues from which Plaintiff Farr is suffering

resulting from this conduct. Under Georgia law, conspirators are held jointly and severally liable for all acts done by them in furtherance of their unlawful combination.

### **COUNT XI – NEGLIGENCE (TATE AND WILSON-BRITT)**

151.

Plaintiffs hereby incorporate by reference the preceding paragraphs as if fully set forth herein.

152.

Tate has a legal duty to act with ordinary care towards Plaintiffs in the execution of his duties as Community and Economic Development Deputy Director.

153.

Wilson-Britt has a legal duty to act with ordinary care towards Plaintiffs in the execution of her duties as a Code Enforcement Manager.

154.

The ULDC states that "whenever a violation of this Code…is alleged to have occurred, any person may file a written complaint with the designated code enforcement officer of the city…The designated code officer *shall* record properly such complaint, investigate, and take action thereon as may be appropriate to enforce this Code." See ULDC Sec. 9-24-2-1.

155.

The ULDC required the code officer to record a complaint and perform an investigation follow receipt of a complaint, which created a ministerial duty to record the complaint and to investigate. *Wanless v. Tatum*, 244 Ga. App. 882, 884 (2000)(holding the written policy requiring employees receiving complaints to make a record of it and for the complaint to be investigated is a ministerial act).

156.

Tate and Wilson-Britt failed to perform any investigation following O'Sullivan's complaints regarding 725 Mountain View.

157.

The failure to investigate was a breach of their duty.

158.

Upon information and belief, code enforcement policies require code enforcement officers to accurately state the city ordinances in code enforcement letters.

159.

The Code Enforcement Notice was sent by Wilson-Britt, at the direction of Matt Tate.

160.

The Code Enforcement Notice stated that "'Lodging Services' is defined in Table 9-6-1 of the City's Unified Land Development Code as a facility that offers shelter accommodations to the public for 15 days or less for a fee" and that "lodging services is not allowed in an R-1 zoning district."

161.

The definition of lodging services in Table 9-6-1, states "A facility that offers temporary (fifteen (15) days or less *in one room*) shelter accommodations or place for such shelter, open to the public for a fee. Includes hotels and motels." Article 9-6, Table 9-6-1 of the City of Gainesville Unified Land Development Code ("ULDC"). (emphasis added).

162.

Wilson-Britt and Tate breached their ministerial duty by failing to accurately state the definition of lodging services under the ULDC in the Code Enforcement Letter.

163.

As a result of Defendants Tate and Wilson-Britt's breach, Plaintiffs suffered damage in an amount to be proven at trial, including but not limited to lost profits

from third party rentals, lost business value, expenses, and damages resulting from the loss of the Purchase Agreement.

## COUNT XII – INTENTIONAL MISREPRESENTATION (TATE AND WILSON-BRITT)

164.

Plaintiffs hereby incorporate by reference the preceding paragraphs as if fully set forth herein.

165.

In the Code Enforcement Notice sent by Wilson-Britt at the direction of Tate, Defendants intentionally misrepresented that Table 9-6-1 of the ULDC applied to R-1 zoning districts knowing it does not apply to these zoning districts; intentionally misrepresented that Plaintiffs were using 725 Mountain View as "lodging services" knowing that Plaintiffs use of their property did not fall under the definition of lodging services; and intentionally omitted that the definition of lodging services was limited to offering "one room" as shelter accommodations, as opposed to governing rental of an entire dwelling.

166.

Plaintiffs justifiably relied on Defendants misrepresentations.

167.

Defendant City of Gainesville is liable through the misrepresentations of Sarah Wilson-Britt and Matt Tate under a theory of respondeat superior and/or agency.

168.

As a result of Defendants' intentional misrepresentations, Plaintiffs suffered damage in an amount to be proven at trial, comprised of lost profits, lost business value, expenses, and other damages.

## COUNT XIII – NEGLIGENT MISREPRESENTATION (TATE AND WILSON-BRITT)

169.

Plaintiffs hereby incorporate by reference the preceding paragraphs as if fully set forth herein.

170.

In the alternative, in the Code Enforcement Notice sent by Wilson-Britt at the direction of Tate, Defendants negligently misrepresented the definition of Lodging Services.

171.

Upon information and belief, code enforcement policies require code enforcement officers to accurately state the city ordinances in code enforcement letters.

172.

The Code Enforcement Notice was sent by Wilson-Britt, at the direction of Matt Tate.

173.

The Code Enforcement Notice stated that "'Lodging Services' is defined in Table 9-6-1 of the City's Unified Land Development Code as a facility that offers shelter accommodations to the public for 15 days or less for a fee" and that "lodging services is not allowed in an R-1 zoning district."

174.

The definition of lodging services in Table 9-6-1, states "A facility that offers temporary (fifteen (15) days or less *in one room*) shelter accommodations or place for such shelter, open to the public for a fee. Includes hotels and motels." Article 9-6, Table 9-6-1 of the City of Gainesville Unified Land Development Code ("ULDC"). (emphasis added).

175.

Wilson-Britt and Tate breached their ministerial duty by negligently misrepresenting the definition of lodging services under the ULDC in the Code Enforcement Letter.

176.

As a result of Defendants Tate and Wilson-Britt's breach, Plaintiffs suffered damage in an amount to be proven at trial, including but not limited to lost profits from third party rentals, and damages resulting from the loss of the Purchase Agreement.

177.

Plaintiffs justifiably relied on Defendants' misrepresentations.

178.

As a result of Defendants' negligent misrepresentations, Plaintiffs suffered damage in an amount to be proven at trial, comprised of lost profits, lost business value, expenses, and other damages.

## COUNT XIV–
## DECLARATORY JUDGMENT (CITY OF GAINESVILLE, TATE, WILSON-BRITT)

### 179.

Plaintiffs hereby incorporate by reference the preceding paragraphs as if fully set forth herein.

### 180.

Defendant City of Gainesville has admitted in its February 4, 2022 correspondence attached as Exhibit G that the City ULDC does not prohibit rental of 725 Mountain View for periods of more than 15 days and does not prohibit listing 725 Mountain View on rental websites such as VRBO and Airbnb for periods longer than 15 days. However, Plaintiffs continue to suffer harm due to Defendants misapplication and misinterpretation of its own ordinances by restricting the right to rent property for periods of 15 days or less and threatening citations and fines.

### 181.

Plaintiffs request a declaratory judgment stating that Plaintiffs are permitted to rent out 725 Mountain View for periods of 15 days or less and to list 725 Mountain View on rental websites offering the property for rent for periods of 15 days or less, and that the ULDC and/or any other applicable ordinance does not prohibit Plaintiffs

from listing property on rental websites and/or renting out 725 Mountain View for periods of 15 days or less.

## COUNT XV– PERMANENT INJUNCTIVE RELIEF  (Daling and O'Sullivan)

### 182.

Plaintiffs have suffered and continue to suffer irreparable harm due to Defendants actions as alleged herein.

### 183.

Plaintiffs request a permanent injunction be granted restraining Defendants Daling and O'Sullivan from entering Plaintiffs' property at 725 Mountain View and from communicating with Plaintiffs or any individuals renting 725 Mountain View. Plaintiffs also request a permanent injunction be granted restraining all Defendants Daling and O'Sullivan from interfering with Plaintiffs lawful right to rent 725 Mountain View and from interfering with any purchase agreements to sell 725 Mountain View.

## COUNT XVI – PUNITIVE DAMAGES (ALL DEFENDANTS)

### 184.

Plaintiffs hereby incorporate by reference the preceding paragraphs as if fully set forth herein.

185.

Defendants actions, as described above, were intentional, willful, and wanton.

186.

Pursuant to O.C.G.A. § 51-12-5.1, punitive damages are appropriate as against Defendants so as to penalize and punish Defendants for its willful misconduct, malice, wantonness, oppression, and entire want of care. Further, such award may deter Defendants from any such further improper and wrongful conduct.

## COUNT XVII – ATTORNEYS' FEES (ALL DEFENDANTS)

187.

Plaintiffs hereby incorporate by reference the preceding paragraphs as if fully set forth herein.

188.

Defendants' conduct constitutes bad faith, stubborn litigiousness, and is causing Plaintiffs' unnecessary trouble and expense.

189.

Accordingly, Plaintiffs are entitled to recover their litigation expenses incurred in prosecuting this action under O.C.G.A. § 13-6-11 and/or 42 U.S.C. § 1988.

WHEREFORE, Plaintiffs pray this Court:

(a)    For actual and compensatory damages in amounts to be determined at trial, with interest thereon, no less than $2,200,000.00;

(b)    enter an order and judgment in favor of Plaintiffs against Defendants on all Counts in the Complaint;

(c)    enter a final injunction restraining Defendants Daling and O'Sullivan from entering 725 Mountain View and from communicating with Plaintiffs or any individuals renting 725 Mountain View;

(d)    enter a final injunction restraining Defendants City of Gainesville, Tate, and Wilson-Britt from tortuously interfering with the lawful rental and sale of 725 Mountain View;

(e)    all available damages associated with Defendants' actions;

(f)    Costs and attorney' fees under O.C.G.A. § 13-6-11 and/or 42 U.S.C. § 1988;

(g)    Pre-judgment and post-judgment interest as provided by law; and

(h)    award Plaintiffs such other and further relief, including punitive damages, as is justified by the facts and the law as the Court deems just and proper.

## **JURY DEMAND**

Plaintiffs hereby request a trial by jury on all triable issues herein.

Respectfully submitted, this 7th day of March, 2023.

PARKER POE ADAMS &
BERNSTEIN LLP

*/s/ David L. Pardue*
David L. Pardue
Georgia Bar No.: 561217
davidpardue@parkerpoe.com
Brian David Stoltz
Georgia Bar No.: 648725
brianstoltz@parkerpoe.com

*Counsel for Plaintiffs*

1075 Peachtree Street NE
Suite 1500
Atlanta, Georgia 30309
678-690-5726

## **LOCAL RULE 7.1(D) CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing pleading has been prepared with Times New

Roman font, 14 point, one of the font and point selections approved by the Court in

L.R.5.1B, N.D. Ga.

*/s/ David L. Pardue*
David L. Pardue
Georgia Bar No.: 561217

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day served a true and correct copy of the foregoing upon counsel of record, via the Court's CM/ECF system, which will automatically send service to counsel of record.

This 7th day of March, 2023.

 /s/ *David L. Pardue*
David L. Pardue